474 P.2d 869

Peter R. HOFSTRA, Appellant,

v.

Margery E. HOFSTRA, Appellee.

No. 1 CA–CIV 1185.

Court of Appeals of Arizona,
Division 1,
Department A.

Sept. 29, 1970.

Rehearing Denied Oct. 28, 1970.
Review Denied Dec. 15, 1970.

Bellamak, Mitchell & Shumway, by Ferris W. Bellamak, Scottsdale, for appellant.

James H. Green, Jr., Phoenix, for appellee.

STEVENS, Judge.

The husband was the plaintiff in an action seeking an absolute divorce. The divorce was granted to him. He appeals from certain of the monetary aspects of the decree. The wife filed a counterclaim for a decree of separate maintenance and does not appeal from the denial thereof or from any portion of the decree which was entered at the conclusion of the litigation.

The husband presents three questions on appeal which we quote as follows:

"I. Did the Court divide the community property in an equitable manner?

"II. Did the Court divest the husband of his title to separate property?

"III. Is the amount ordered by the Court for alimony and child support so excessive as to constitute an abuse of judicial discretion?"

In view of the limited issues which are presented to this Court there are many facets of this case which will not be discussed in this opinion.

The husband and the wife grew up in New Jersey and had known each other as young people. Their families were friends. They were married in 1949 before the husband completed his education. For a time the wife worked. After the husband's admission to the practice of law in New Jersey, he was associated with his father in the practice of his profession. While in New Jersey he was given certain stocks and purchased certain stocks. He dealt in real estate to some extent.

The parties moved to Arizona, arriving in and settling in Prescott in August 1958. At that time the wife had few monetary assets and to all intents and purposes the monetary assets of the couple were the sole and separate property of the husband. The husband did not seek to follow the practice of law in Arizona. He engaged himself in business and in ranching.

Three children were born of the marriage in New Jersey and four children were born of the marriage in Arizona. The first child was born on 16 June 1952 and the youngest child was born on 19 February 1967.

The husband moved out of the family home on 10 September 1967 and the divorce action was filed on 4 December of the same year. The action was tried with an advisory jury in November 1968.

During the course of the marriage the wife acquired stocks of a value of approximately $40,000. These were acquired largely by gift.

During the course of the marriage the value of the husband's stocks appreciated materially. The major holdings were in a bank, the stock of which was sold over the counter to a limited market composed of a limited few in that not too many persons knew of or were interested in buying this particular stock. Some of the wife's assets were shares of stock in the same bank.

The wife does not contest the assets decreed to the husband. The contest as to the property is presented by the husband. There are four pieces of real property. These are the home on Arroyo Drive; the Coyote Springs Ranch; the Harbeson portion of the Copper Canyon Ranch; and the Sasser portion of the Copper Canyon Ranch. At the time of the entry of the decree of the divorce each of the properties was subject to a separate mortgage.

The husband testified:

" * * * I diligently kept my property separate from community property, * * *."

Reviewing the financial assets of the parties and the testimony presented at the trial leaves little doubt that the sale of the husband's sole and separate property or loans secured by the pledge of his sole and separate property were the major sources of funds for investment. The husband's earnings in Arizona did not reach the point of a sufficient return to support the family, much less enough to take care of the necessary payments on capital investment and interest. While the husband, in his own mind, may have diligently kept his property separate from community this was not

clearly communicated to the wife, at least not at the time of investment.

## THE HOME

The date of the acquisition of the home and the manner in which title was taken is not reflected in the record. At the time of trial the property had an estimated value of $35,000 to $37,000 subject to a $7,000 mortgage. At all times during the trial this property was conceded by the husband to be community property. The home was awarded to the wife "free and clear from any liens and encumbrances," thus casting the burden of the payment of the mortgage upon the husband. Though contested in the trial court, this portion of the decree casting the burden of payment upon the husband is not contested before this Court. The award of the home is considered by the husband on the appeal only in relation to the overall distribution of the property.

## COYOTE SPRINGS RANCH

Other than alimony and child support, which are treated later in this opinion, the Coyote Springs Ranch is the major issue before this Court.

In connection with this phase of the financial picture it is necessary to digress a bit. The husband testified that on 1 November 1958 he invested in a business known as the Yavapai Block Company. He testified that in making the investment he used borrowed and separate funds. According to the husband's testimony the wife "had no interest of record" in the company. The Hofstra interest in the company was sold in December 1966 and on the 23rd day of that month the husband wrote a check in favor of the wife for one-half of the proceeds of the sale, namely the sum of $41,832.50. The husband described this as a gift to the wife. The husband retained a like sum.

The Coyote Springs Ranch at the time of purchase consisted of patented land, state leases, a federal forest permit and some livestock. The ranch was purchased in January 1966. In connection with this property we find the following question and answer as a part of the husband's direct examination.

"Q. Okay. We had just begun to discuss the Coyote Springs Ranch before the noon recess. I think this is the property that you believe to be community property owned by both you and your wife, Margery; is that correct?

"A. Yes, sir."

The deed is not in evidence and we assume from the foregoing question and answer and from the conclusion of the trial court hereinafter quoted that the deed named the husband and wife as the grantees. There is no evidence that at the time of acquisition there was a declared intention by the husband that he reserved as his sole and separate property the value of any cash investment.

Using only round figures, the evidence indicates that the overall purchase price was $340,000. The husband borrowed $125,000 pledging his stock as security. $120,000 thereof was used as a down payment and the balance was placed in a bank account for operating expenses in connection with the ranch. In January 1967, in addition to an interest payment, the further sum of $80,000 was paid in principal. The more than $40,000 which the wife had received in connection with the sale of the family interest in the Yavapai Block Company was utilized in putting together the $80,000 principal payment. In December 1967 livestock was sold and the forest permit was sold making it possible to further reduce the unpaid principal balance by an additional $80,000, leaving the unpaid principal balance at the time of trial in the sum of $60,000. This sum was due on 15 March 1969, a very few months after the trial. At the trial the husband established the gross value of that portion of the Coyote Springs Ranch which remained unsold, testifying that the value thereof was approximately $240,000. The Coyote Springs Ranch was awarded to the wife:

"* * * subject to any liens or encumbrances thereon."

The husband testified that at the time of trial $75,000 of the $125,000 loan remained unpaid of which $25,000 was due in January 1969.

■ The record does not disclose that the husband made known to the wife until during the trial the potential claim for the reimbursement of or a lien for payment of the original $125,000 loan. In our opinion it was then too late to successfully urge this position. This is especially true when one considers that the source of investment for all of the substantial assets was the sale of his separate property or a loan secured by pledge of his separate property and as to portions thereof the husband acknowledged that the same were community property. The manner in which the husband made clear his intent to preserve the separate property status of real property will. be shown in connection with a brief discussion of the Copper Canyon Ranch. The trial court entered the following conclusion of law.

"The Coyote Springs Ranch was intended to be acquired as community property * * *."

The evidence adequately supports this legal determination by the trial court. In our opinion the record does not present clear and satisfactory evidence to the contrary.

The husband urges that he should be granted 125/240ths interest in the ranch or a $125,000 lien against the ranch. With this we do not agree.

■■ The status of property, whether community or separate, is determined at the time of the initial acquisition thereof. The presumption is that property acquired in Arizona during marriage is community property. Issues of this nature are determined upon the evidence or the lack of evidence. We have reviewed a number of Arizona cases including Porter v. Porter, 67 Ariz. 273, 195 P.2d 132 (1948); Lawson v. Ridgeway, 72 Ariz. 253, 233 P.2d 459 (1951); Nace v. Nace, 104 Ariz. 20, 448 P. 2d 76 (1968); and Armer v. Armer, 105 Ariz. 284, 463 P.2d 818 (1970), and it is our opinion that under the facts before us

the Arizona case law does not·compel a conclusion which differs from the one reached by the trial court. We need not decide whether funds borrowed during marriage in connection with which the loan is secured by a pledge of the husband's separate property creates a community debt or establishes that the funds received on the loan were community funds or the separate funds of the husband. The case of Kingsbery v. Kingsbery, 93 Ariz. 217, 379 P.2d 893 (1963), supported the finding of the trial court in that case that the proceeds of the loan were separate funds. In our opinion the case does not compel such a finding in each instance.

In our opinion the husband chose to litigate this ranch as community property and is bound thereby. Armer (supra) and Calderon v. Calderon, 9 Ariz.App. 538, 454 P.2d 586 (1969).

■ The husband urges this Court to announce a rule which would be the converse of the rule set forth in Lawson (supra). In Lawson the Court held that where the husband as the manager of community personal property uses that community personal property to improve his own separate property such action is a fraud upon the community entitling the estate of the later deceased wife to recoupment. In our opinion the converse is not true. Where the husband who manages all of the business and financial affairs of the family improves community property with his own separate funds he is not automatically entitled to recoupment thereby.

We affirm the community character of the Coyote Springs Ranch and the refusal of the trial court to adjudicate that the husband has, as his sole and separate property, a monetary interest therein.

## COPPER CANYON RANCH

· This property was acquired in two parcels, one from the Sassers and one from the Harbeson estate. The trial court held that the property was the sole and separate property of the husband and the wife does not contest this. We discuss this property only

to illustrate the method used by the husband to clearly establish the sole and separate character of this property at the time of acquisition.

The deed from the Sassers was executed on 23 December 1968 and recited that the husband was the grantee as his sole and separate property. On the same date the wife executed a disclaimer deed to the husband.

The deed from the Harbeson estate was executed on 31 August 1967, again to the husband as his sole and separate property. On 7 September of the same year the wife executed her disclaimer deed to the husband.

Prior to the execution of the Harbeson deed and on 6 June 1967 the husband consulted a psychiatrist in relation to his marital problems. The psychiatrist testified that on the date of this first interview the husband had made up his mind that there would be a divorce.

## CHILD SUPPORT AND ALIMONY

The husband was the manager of the family finances and the wife had little knowledge thereof prior to the separation except as to some household monies which were furnished to her by the husband. The husband testified that the family expenses prior to the separation were $1,400 a month. On 22 July 1968 a *pendente lite* order for alimony and child support was entered in the sum of $1,800 a month. At the trial the wife testified that she was not able to meet the usual as well as the unusual (doctors' bills, house repairs, vacations, etc.) out of this allowance and that at times bills remained unpaid.

The decree granted alimony in the sum of $1,000 a month and child support in the sum of $250.00 for each child or a total of $33,000 a year.

The husband's assets were in the neighborhood of a million dollars. These assets could not be readily reduced to cash and a substantial capital gain would result upon the sale of some of them. He had large debts in connection with his purchases of property. Neither of the ranches could be operated so as to pay its own way that is, so as to meet the costs of operation and the expense of debt retirement.

■ After the trial the husband secured a statement from a certified public accountant and this was presented to the court in support of the husband's argument that the sums were excessive in that they required a periodic liquidation of his investments in order to meet them. The wife objects to the use of this statement. In our opinion the husband was not attempting to present new evidence. Counsel for the husband could have prepared the same compilation based upon an interpretation of the law relative to income taxation.

■ The husband urges that the decree runs counter to A.R.S. § 25–318 which, in subparagraph A, states that the trial court "shall order such division of the property of the parties as to the court seems just and right * * * without compelling either party to divest himself or herself of title to separate property." We do not agree with this contention. Subparagraph B of this section authorizes the trial court to "impress a lien upon the separate property * * * to secure the payment of any allowance for such support and maintenance of the wife or the minor children * * *." as may be decreed by the court. This the trial court did not attempt to do.

The husband attacks the wife's claim of need for herself and the children by urging that she has included nonrecurring expenses. There were expenses which did not recur each month, but frequently there were such nonrecurring expenses.

The husband urges that the college education for the children has been provided. Prior to the birth of the youngest child the husband's parents established a trust of $10,000 for each of the six children for educational purposes. The husband testified that he intended to do the same for the youngest and that he had made a $2,000 start in that direction.

## WAS THERE AN ABUSE OF DISCRETION?

Arizona's appellate courts have the power to modify the division of property and the power to modify alimony and child support. A.R.S. § 12–2103 formerly A.C.A., 1939, § 21–1832 cited in Porter (supra). See also Warren v. Warren, 2 Ariz.App. 206, 407 P.2d 395 (1965). We are called upon by the husband to exercise this power both in relation to the real property and in relation to the alimony and child support. The alimony and child support must bear a relation not only to the needs but also to the husband's ability to pay. Kennedy v. Kennedy, 93 Ariz. 252, 379 P.2d 966 (1963).

After the trial and before the entry of the decree of divorce the husband urged that the child support be reduced from $250.00 per month to the sum of $140.00 per month per child. There was no showing that this sum was within the expected income of the husband.

This Court is reluctant to substitute its judgment for the judgment of the trial court. In this instance it is the opinion of this Court that the child support payments should be reduced to the sum of $200.00 per month per child.

In relation to the division of the real property, the trial court was faced with an unusual situation. The major portion of the assets of the marital community was derived from the sale of or from loans secured by the separate property of the husband. The trial court must have concluded that under all of the circumstances it was not realistic to divide the Coyote Springs Ranch. We affirm the division of the real property.

The judgment is affirmed except that the issuance of the mandate in connection with this opinion shall constitute an order amending the decree of divorce prospectively, and not retroactive to the date of the decree, to provide for child support in the sum of $200.00 per month for each child effective on the payment date next following the issuance of the mandate.

DONOFRIO, P. J., and WILLIAM C. FREY, Judge of the Superior Court, concur.

NOTE: Judge JAMES DUKE CAMERON having requested that he be relieved from consideration of this matter, WILLIAM C. FREY, Judge of the Superior Court, was called to sit in his stead and participate in the determination of this decision.