572 P.2d 446

**Elizabeth H. MOSER, Appellant,**

v.

**Joseph Russell MOSER, Appellee.**

**No. 2 CA–CIV 2483.**

Court of Appeals of Arizona,
Division 2.

Oct. 24, 1977.

Rehearing Denied Nov. 18, 1977.

Review Denied Dec. 13, 1977.

Russo, Cox, Dickerson & Cartin, P. C. by Robert B. Donfeld, Tucson, for appellant.

William Gordon, Tucson, for appellee.

## OPINION

HOWARD, Chief Judge.

This is an appeal from a judgment in a dissolution case. The controversy revolves around three aspects of the case, to-wit, the characterization and division of life insurance policies; the valuation of shares of stock in a closely held corporation and the amount of attorneys' fees awarded to appellant.

In deciding this appeal we shall confine our review to the evidence adduced at trial and shall not consider evidence offered by both parties during the hearing on the motion for new trial. The trial court did not reopen the case to permit the introduction of this latter evidence, recognized that it was not newly discovered and apparently did not consider it.

■ Appellee has urged us to dismiss this appeal citing *Finck v. Finck*, 9 Ariz.App. 382, 452 P.2d 709 (1969), for the proposition that a party accepting some benefits under a judgment cannot appeal from the judgment. We do not believe this legal proposition is applicable here since, as in *Finck*, appellant is entitled at least to what was awarded to her by the trial court.

The life insurance policies involved were on the life of appellee and were initially acquired in the State of New York prior to the parties moving to Arizona in 1963. When they were purchased, appellee was the owner. Prior to leaving New York, he had borrowed $8,000 on the policies. As of the trial this loan had not been repaid, but community funds were used to pay the interest on the loan. After the parties came to Arizona, additional loans were made on the policies and the proceeds were used for community living expenses and to purchase community assets. Community funds were used to pay the premiums. On September 3, 1966 and February 27, 1967 appellee, for estate tax purposes and upon the advice of his attorney, transferred ownership of the policies to his wife, the appellant. Although the cash value of the policies was more than $3,000 at each time of transfer of ownership, appellee did not file a gift tax return or deliver the policies to his wife. Since the transfer, additional loans were made on the policies and used for community purposes and community funds were used to pay the premiums.

At trial, it was shown that the cash value of the policies, less the amount of loans, totalled $11,500 and it was appellee's position that the policies were community property. He introduced into evidence an exhibit which purported to show the community assets of the parties, and the cash surrender value of the policies was listed thereon. When questioned by his attorney as to his intent when ownership of the policies was transferred to his wife, appellee answered that he intended to retain his half interest and that both he and his wife considered all the property they owned as being community property. His attorney stated to the court:

"We make no bones about that [the tax saving aspect], it was assigned to her for the purpose of saving estate taxes and with no intention of relinquishing the community interest. . . .

\* \* \* \* \* \*

. . . it reminds me of a wife who quitclaims to the husband to save the real estate taxes downstairs because he is a veteran, and it has been held that she doesn't give up her half."

In her deposition taken prior to trial appellant testified that it was "possible that

the insurance policies were her separate property. At trial, on direct examination she testified that the policies were her separate property but on cross-examination stated that even though the policies were in her name she believed both she and her husband owned them.

The first time appellee contended the policies were his separate property was in response to the court's request for memoranda three months after the trial in which the court stated that since the policies were acquired in New York, they would appear to have been appellee's separate property. The trial court after receipt of the memoranda, eventually found the policies to have been the separate property of appellee, that there was no donative intent and awarded them to appellee. It also determined that the net community interest in the policies, i. e., the net amount the cash surrender value of the policies had increased while the parties were living in Arizona, was $1,811.85 and awarded this sum to the wife. This conclusion was based upon an exhibit prepared by his accountant, attached to appellee's memorandum, which had not been introduced into evidence and which contained conclusions not supported by the trial record.

◼ Appellant contends that the assignment of the policies was conclusive and that appellee cannot contend that she was not the absolute owner. We do not agree. As we remarked in *Neely v. Neely*, 115 App. 47, 563 P.2d 302 (1977), a case also involving the transfer of ownership of insurance policies, the mere form of a life insurance policy is not conclusive as to either ownership or whether a gift has been made. Donative intent must be ascertained in light of all the circumstances. The facts here are more than sufficient to show that the parties did not intend the wife to be the sole owner of the policies.

◼ We believe, however, that appellant is correct in concluding that she is entitled at least to one-half community interest in the policies. Appellee chose to litigate the policies as community property and is bound thereby. *Hofstra v. Hofstra*,

13 Ariz.App. 150, 474 P.2d 869 (1970). It was only after the trial, when he saw he had a chance to classify them as his separate property that he shifted his approach. The evidence demonstrates that the parties treated the policies as community property. A husband and wife can, by agreement, transmute separate property to community property. *Myrland v. Myrland*, 19 Ariz. App. 498, 508 P.2d 757 (1973). Even in the absence of an explicit agreement, written or oral, a court may find a transmutation of property if the circumstances clearly demonstrate that one spouse intended to effect a change in the status of his separate property. *Beam v. Bank of America*, 6 Cal.3d 12, 98 Cal.Rptr. 137, 490 P.2d 257 (1971). There can be no clearer evidence of appellee's intention than his testimony at trial that the policies were community property. There was no evidence to support the trial court's conclusion that the policies were his separate property.

◼ The total cash surrender value of the policies when all loans are deducted is $11,500. Appellant claims that the $8,000 loan which was incurred in New York should not be deducted from the cash surrender values in order to determine their value as community assets. She relies on *See v. See*, 64 Cal.2d 778, 51 Cal.Rptr. 888, 415 P.2d 776 (1966) and *Hofstra v. Hofstra*, supra, as authority. We do not believe these cases support her position. The *See* case is not on point. In *Hofstra* the husband borrowed $125,000 to purchase a ranch which he claimed at trial to be community property. This loan was secured by a pledge of his separate property. The value of the ranch was $240,000. He argued that he should be granted a 125/240th interest in the ranch or a $125,000 lien against the ranch. The court disagreed because at the time the ranch was acquired he never declared that he reserved as his sole and separate property any cash investment and it was too late to do so for the first time at trial. The case sub judice factually differs from *Hofstra*. Here we have separate property subject to a loan transmuted into community property. We believe that un-

der such circumstances the community takes the property subject to the debt thereon and the value of the community interest is its fair market value less the amount of the debt unless at the time of its transmutation, the parties agree otherwise. Appellant's one-half community interest in the policies amounted to $5,750 and the trial court should have awarded her that amount instead of the $1,811.85.

■ We now turn our attention to the capital stock in the Fort Lowell Medical Corporation which was awarded to appellee. The trial court assigned a value of $1.25 per share to this stock in computing the division of the property.[1] Appellant offered into evidence an exhibit which showed the book value of the shares one year prior to the date of the trial to have been $1.44 per share. Subsequent to the date of the exhibit the shareholder doctors, in order to rescue the corporation from financial difficulties, bought more stock for $1.25 per share. There was no other competent evidence introduced at the trial on this issue. The court did not err in its valuation of the shares of stock.

■ Lastly, appellant contends that the trial court abused its discretion in awarding her $750 attorneys' fees when on the date of trial, she owed her attorneys $2,788.57 having already paid them the sum of $300. Time sheets were introduced into evidence which indicated much of the time was spent in conferences with appellant. The trial court was of the opinion that unnecessary time was spent on the case. The trial court abuses its discretion as to attorneys' fees only when its view would not be taken by a reasonable man. We find no abuse.

The judgment is modified by awarding appellant $5,750 as her share of the community interest in the insurance policies and the judgment is affirmed as modified.

Each party is to bear his or her own attorneys' fees on appeal.

HATHAWAY and RICHMOND, JJ., concur.

---

1. To equalize the award of the stock to the husband, the wife was awarded a mortgage valued at $16,000. There was other property awarded to the parties which is not necessary to be listed here.