744 P.2d 717

**In re the Marriage of Patricia S. ROWE, Petitioner/Appellant/Cross-Appellee,**

v.

**Jack ROWE, and Jack Rowe Associates, an Arizona corporation, Respondents/Appellees/Cross-Appellants.**

**In re the Marriage of Patricia S. ROWE, Petitioner/Appellee,**

v.

**Jack ROWE, Respondent/Appellant.**

Nos. 2 CA–CV 87–0066, 2 CA–CV 87–0067.

Court of Appeals of Arizona, Division 2, Department A.

June 5, 1987.

Reconsideration Denied July 14, 1987.

Review Denied Oct. 20, 1987.

Lewis and Roca by Jeremy Butler, Phoenix, for petitioner/appellant/cross-appellee.

Bonn and Pohlman by Paul V. Bonn and John G. Clancy, Phoenix, for respondents/appellees/cross-appellants.

## OPINION

HATHAWAY, Chief Judge.

This appeal and cross-appeal arise out of the characterization and disposition of certain property, primarily corporate stock, in connection with the lengthy and acrimonious dissolution of Jack and Patricia Rowe's marriage. Jack Rowe and Jack Rowe Associates (JRA) are joined together as appellees/cross-appellants and will be referred to collectively as Jack Rowe.

The parties were married on February 26, 1974. In September of 1982, Patricia Rowe petitioned for separation. After a 61-day trial, that stretched over five months and involved attorneys' fees and costs exceeding $500,000, the trial judge made extensive findings of fact and conclusions of law. He then divided the community property and ordered that the stock in JRA be awarded to Jack Rowe as his sole and separate property. The judge denied either party any spousal maintenance, costs or attorneys' fees.

Patricia Rowe appeals, contending that: (1) the court erred in not finding that the JRA stock is community property; (2) the court erroneously concluded that the parties had not orally agreed to share ownership of the corporation; (3) the court erred in not awarding the community an interest in the stock; (4) the court abused its discretion by denying her spousal maintenance and attorneys' fees. Jack Rowe cross-appeals on the grounds that: (1) the court abused its discretion by not awarding him attorneys' fees and by awarding Patricia Rowe $7,000 towards her fees and costs on appeal; (2) the trial judge erred in failing to calculate and consider the tax consequences of the receipt of his pension funds.

We find none of these arguments persuasive and affirm.

## DISPOSITION OF THE CORPORATE STOCK

At the time of the marriage and for approximately 10 years prior, Jack Rowe was the owner and sole proprietor of an unincorporated manufacturer's representative business called Jack Rowe Associates. Less than six months after the marriage, on August 5, 1974, Jack Rowe incorporated his business and directed that the corporate stock be issued in his name. The capital account of JRA at incorporation consisted of 30,000 shares of common stock with a $1.00 par value and $9,000 in paid-in capital. As of May 31, 1983, the book value or shareholders equity in JRA was $518,774.

JRA primarily represented manufacturers of consumer electronics on a commission basis by placing their products with a network of accounts within eight western states. JRA also conducted a distribution business by purchasing, warehousing and retailing certain manufacturers' products. Jack Rowe acted as a salesman or representative and also managed the business.

From incorporation until September 27, 1982, Jack and Patricia were JRA's sole officers and directors. Jack was president and treasurer; Patricia was vice-president and secretary. On September 27, 1982, Jack Rowe held a special shareholder meeting and removed Patricia as a director and officer.

At trial, the central issue was whether the stock of JRA was Jack Rowe's separate property or belonged to the community. The court found it to be separate property and held that the community was entitled to no lien against the value of the stock as it had been adequately compensated over the course of the marriage.

Patricia Rowe first argues that there is a strong presumption that the stock is community property because it was issued after marriage and this presumption can be overcome only by clear and convincing evidence. She reasons that because the court acknowledged that it could not accurately trace the commingled community contribu-

tions and separate property aspects of the corporation, it was error as a matter of law to conclude that the stock was separate property.

■ Contemporary Arizona caselaw demonstrates the error in Patricia Rowe's argument. The rebuttable presumption that she urges upon the court applies to property acquired during marriage. *Bender v. Bender*, 123 Ariz. 90, 597 P.2d 993 (App.1979). An asset that is separate property before marriage remains separate property after marriage until changed by agreement or operation of law. *Cockrill v. Cockrill*, 124 Ariz. 50, 601 P.2d 1334 (1979); *Drahos v. Rens*, 149 Ariz. 248, 717 P.2d 927 (App.1985). Here, Jack Rowe acquired JRA 10 years before the marriage, and thereby its status as separate property became fixed. See *Potthoff v. Potthoff*, 128 Ariz. 557, 627 P.2d 708 (App.1981). The trial court found, and we agree, that merely changing the form of the company by incorporation during marriage did not transmute the character of the property. *Porter v. Porter*, 67 Ariz. 273, 195 P.2d 132 (1948). Jack Rowe's labor on behalf of the community during the five-month and 10–day interval between marriage and incorporation also did not, in and of itself, transmute the character of the separate asset. The court found that neither the assets nor value of JRA increased and that the community was adequately compensated for all services provided to JRA on its behalf during the interval at issue. We agree with the trial judge that courts should not require a spouse to withhold his or her labor from a separately-owned business in order to avoid converting it to a community asset. See *Michelson v. Michelson*, 89 N.M. 282, 551 P.2d 638 (1976); *Katson v. Katson*, 43 N.M. 214, 89 P.2d 524 (1939).

The trial court found that "[t]he accounts receivable, product inventory, bank accounts, and liabilities of Jack Rowe Associates fluctuated with day to day transactions from the date of marriage to the date of incorporation." Patricia Rowe argues

that it was therefore error for the court to conclude that although, as of the date of incorporation, JRA's assets "were in unsegregated part the product of husband's post-marital management and labor, those assets were not community property." She relies on the commingling rule of *Cooper v. Cooper*, 130 Ariz. 257, 635 P.2d 850 (1981): unless one can explicitly trace his or her separate property, commingled community and separate funds will be presumed community property. However, her reliance is misplaced. *Cooper* involved the commingling of monies in a savings account. When monies are commingled in a savings account, the identity of separate funds is easily lost. It also appears that the spouses desired to treat the account as a community asset. Here, the identity of JRA was not obscured prior to incorporation. The value of the proprietorship had not increased. The community had been compensated. Arizona law does not transmute JRA's separate property.

■ Parties may change their separate property to community property by agreement. *Moser v. Moser*, 117 Ariz. 312, 572 P.2d 446 (App.1977). Patricia contends that she and Jack so agreed and it was error for the court to conclude otherwise.[1] She claims that the court should have found in her favor because it had only Jack Rowe's testimony contrary to hers and because she produced additional witnesses and certain corporate documents that supported her position.

Findings of fact are conclusive and binding unless clearly erroneous or unsupported by any credible evidence in the record. Rule 52(a), Rules of Civil Procedure, 16 A.R.S.; *Herzog v. Boykin*, 148 Ariz. 131, 713 P.2d 332 (App.1985). Contrary to Patricia's contentions, the court did have credible evidence to support its finding. Jack testified that he never agreed to share stock ownership. He provided two witnesses who contradicted Patricia and her witnesses. Additionally, the stock was issued solely in his name. As

1. Patricia Rowe also contends that it was error for the trial court to conclude, as a matter of law, that even if there was an agreement, it was

barred by the statute of frauds. We do not address this issue as the trial judge specifically found no agreement and we affirm that finding.

for the offered corporate documents, Patricia does not demonstrate that her name appears in connection with statements as to stock ownership by order or direction from Jack. See *Porter v. Porter,* supra.

We will not weigh the conflicting evidence; rather, we limit our inquiry to a determination of whether substantial evidence exists to support the trial court's action. *Whittemore v. Amator,* 148 Ariz. 173, 713 P.2d 1231 (1986). The court had the opportunity to judge the credibility of the witnesses. Given each parties' obvious self-interest, we cannot say that the court erred in believing Jack Rowe.

Patricia Rowe next challenges the court's method of allocating the increase in value of the stock. During marriage, separate property may increase in value due to a combination of the inherent nature of the separate property and community labor. Such increases must be apportioned upon dissolution. In *Cockrill,* the Arizona Supreme Court outlined several acceptable methods of apportionment, two of which are relevant here. The court may:

> determine the reasonable value of the community's services and allocate that amount to the community, and treat the balance as separate property attributable to the inherent nature of the separate estate. ... [The court also] may simply allocate to the separate property a reasonable rate of return on the original capital investment. Any increase above this amount is community property. [citations omitted]

124 Ariz. at 54, 601 P.2d at 1338.

The trial court used the "reasonable value of the community's services" method. It found that the predominant causes of the growth, profitability and value of JRA were community toil, effort and credit. However, the growth was also caused, in substantial part, by other factors including: the marketing efforts of the manufacturers that JRA represented; increased consumer acceptability of those manufacturers' products; western population growth; inflation; increased consumer buying power; increased demand for consumer electronic products; and, account development and

sales efforts by JRA representatives other than Jack Rowe. The court stated: "A fair summary of the growth of Jack Rowe Associates is to say that the husband had worked hard before the parties' marriage to put his company in the right place with the right lines at the right time, that he continued to work hard after marriage and to apply the credit of the community to hold and expand his company's place and lines; and that the realization of all these efforts and growth of the company occurred primarily after marriage."

The court admitted that it could not precisely quantify the overlapping contributions. It did determine that at least two-thirds of the responsibility for the post-marital growth of JRA was due to the community contribution and that at least one-quarter of the growth was attributable to a return on the inherent value of the pre-marital company. The court concluded that a fair ratio to apply would be three-fourths/one-fourth. Because the community had received, through distribution and pension and profit-plan contributions, more than 75% of the sum of net distributable earnings and (assumed) goodwill, the court held that the community had been fairly compensated for all of its contributions to the growth of JRA. Therefore, the corporate stock was awarded to Jack Rowe as his sole and separate property.

Patricia Rowe contends that because the court used the fair compensation for community services method, it allocated none of the increase in value to the community. Patricia argues that the "fair compensation to the community" approach, *Van Camp v. Van Camp,* 53 Cal.App. 17, 199 P. 885 (1921), emphasizes the initial capital investment while the "fair rate of return on initial investment" approach, *Pereira v. Pereira,* 156 Cal. 1, 103 P. 488 (1909), emphasizes the community effort or investment. Because JRA had a sparse initial capitalization and experienced growth due largely to the community effort, she claims there is no valid reason to use the fair compensation approach. Apparently, Patricia would have us hold that when there are facts such as those in the instant case,

judges should exercise their discretion by choosing the fair rate of return on investment approach. We decline to so narrowly interpret *Cockrill.*

The *Cockrill* court obviously anticipated that a passive versus active investment distinction would be too simplistic to achieve substantial justice in factually idiosyncratic dissolution cases. Admittedly, if a separate asset's increase was due solely to the initial capital investment, or solely to the community effort, a mandatory allocation method such as that proposed by Patricia Rowe would be appropriate. Most cases lie somewhere between the opposite ends of the spectrum, and "[t]he trial court is not bound by any one method, but may select whichever will achieve substantial justice between the parties." *Cockrill,* 124 Ariz. at 54, 601 P.2d at 1338. We will not disturb the court's decision to use a particular method if the court acted equitably. *Cockrill v. Cockrill,* 139 Ariz. 72, 676 P.2d 1130 (App.1983) (appeal after remand).

The trial court did not abuse its discretion in allocating the increased value of JRA. The business value did not flow exclusively from the initial $39,000 invested. Jack Rowe's 10 years of effort before marriage gave JRA a well-established reputation. At incorporation, Jack was issued the stock in exchange for the assets of the sole proprietorship; goodwill was not considered. These facts alone indicate that it may have been unfair to use the fair rate of return on investment approach. Moreover, the court found, and no one disputes, that the community was adequately compensated for its efforts. The court might also have based its choice of valuation methods on the fact that the once vigorous corporation had suffered reductions in value due to peso devaluations and loss of primary manufacturers.

Contrary to Patricia's contention that it is somehow unfair to award the community nothing other than compensation it has already received, our courts have previously recognized that a community may be fairly compensated by salaries and draws received prior to dissolution. *Baum v. Baum,* 120 Ariz. 140, 584 P.2d 604 (App.

1978); *Nelson v. Nelson,* 114 Ariz. 369, 560 P.2d 1276 (App.1977).

## SPOUSAL MAINTENANCE

If a court finds that a spouse is incapable of self-support through appropriate employment and lacks sufficient property to provide for his or her reasonable needs, the court may grant spousal maintenance. A.R.S. § 25–319; *Deatherage v. Deatherage,* 140 Ariz. 317, 681 P.2d 469 (App.1984). The trial court found that neither Patricia nor Jack was entitled to spousal maintenance. Patricia Rowe contends the court abused its discretion because after she pays her attorneys' fees, costs and debts, and buys a suitable residence, she will only have $72,000 remaining from money awarded her in the dissolution proceedings. She claims that based upon the parties' standard of living during the marriage, she needs $10,000 a month or $6,000 not considering housing and utility costs, and that the award is not calculated to meet her reasonable needs based upon A.R.S. § 25–319(B). She also claims that her case is not unlike the situation in *Thomas v. Thomas,* 142 Ariz. 386, 690 P.2d 105 (App.1984), where the court held that it would be unfair to allow the husband to accumulate funds toward his retirement while the wife was forced to pay living expenses from her nest egg.

These § 25–319(B) arguments are premature. A court first must determine, based upon A.R.S. § 25–319(A), that the spouse is entitled to maintenance. Spousal maintenance should not be awarded if it is not necessary to a spouse's support and maintenance. *Buttram v. Buttram,* 122 Ariz. 581, 596 P.2d 719 (App.1979). A spouse capable of self-support is not entitled to spousal maintenance. *Neal v. Neal,* 116 Ariz. 590, 570 P.2d 758 (1977).

Patricia's situation is not comparable to the *Thomas* case. Unlike the wife in *Thomas,* Patricia is young, has an employment history, and was found to be only temporarily unable to support herself by employment. The court awarded her a substantial sum of money, including the proceeds from the sale of the marital resi-

dence and all the interest those proceeds had accumulated. She also received wine inventory worth at least $7,000, household furnishings valued at $22,679 and a 1982 Cadillac Seville valued at $11,218.69.

From the record, it appears that the corporation is not worth what it once was. Neither party could be found, as a matter of law, to be entitled to $10,000 a month based upon what the corporation once made. The record supports the court's finding that Patricia Rowe is able to support herself and we find no abuse in the court's ruling.

## ATTORNEY'S FEES

After a four-day hearing on the issue, the court denied both parties attorneys' fees. The court found that each party had sufficient property to pay his or her own fees. Both Patricia and Jack appeal the denial. Patricia claims that although the community property was divided equitably, Jack had control over a separate asset, JRA, and should have been required to pay at least a portion of her fees. She claims that she cannot be expected to support herself and pay her debts and attorneys' fees with the money the trial court awarded her. Jack, on the other hand, claims that because he prevailed on the main issue, that of the stock ownership, Patricia should be ordered to pay lest others be encouraged to engage in similar "scorched earth litigation."

■ Attorney's fees are allowed only where provided for by contract or by statute. *Bouldin v. Turek*, 125 Ariz. 77, 607 P.2d 954 (1979). The applicable attorneys' fees statute for dissolution proceedings is A.R.S. § 25–324. Under § 25–324, the court's sole consideration relates to the parties' financial resources. *Standage v. Standage*, 147 Ariz. 473, 711 P.2d 612 (App.1985). If the facts so warrant, it is not an abuse to order that each party bear his or her own fees or costs. See *In re Marriage of Rowe*, 117 Ariz. 474, 573 P.2d 874 (1978).

■ We cannot say that the court abused its discretion by holding that Patricia Rowe was financially able to bear her own fees. She received approximately $550,000, without interest, from the sale of the marital residence. Her portion of the JRA pension plan, valued at $50,850, was rolled into an IRA for her benefit. Jack Rowe was also ordered to pay her $72,-113.94 to equalize the distribution of community property.

■ Jack Rowe admits that under the present state of the law, the court properly ordered both parties to bear their own costs. He requests, however, that we award him at least some of his attorneys' fees under either A.R.S. § 12–341.01(A), § 12–341.01(C), or certain abuse of process cases. Jack Rowe asks that we hold that A.R.S. § 12–341.01(A), which permits fees in cases based upon contract, applies in extraordinary domestic relations cases when trial resembles a commercial law case. We decline to so extend the statute. A.R.S. § 12–341.01(C) allows attorneys' fees where a party brings a suit in bad faith or solely for the purposes of harassment. Jack Rowe claims that where greater than 40% of the community estate was spent on attorney's fees, the statute should be applied. The court below found that Patricia's claims were colorable, and not brought in bad faith.[2] Thus we will not assess fees against Patricia. *Standage v. Standage*, supra. Had the court specifically found that either party abused the judicial system during the lengthy litigation, we might agree that an award of attorney's fees would be appropriate. See *Mori v. Mori*, 124 Ariz. 193, 603 P.2d 85 (1979). In *Mori*, the court made such an award because of the lengthy discovery required to locate the husband's assets. The Court of Appeals held that although the wife was financially able to bear her own costs, due to her husband's abuse of process, she was entitled to an award of attorney's fees. Such is not the case here. The trial court found that considerable trial time was devoted to unraveling Jack's impermissive disposition of community assets and that

---

**2.** Jack Rowe has not demonstrated that this finding is clearly erroneous.

the parties bore roughly equal responsibility for the lengthy proceedings.

■ Subsequent to the trial judge's entry of an amended decree and findings and conclusions, a different judge ordered that Jack Rowe pay Patricia Rowe $7,000 towards her attorneys' fees and costs on appeal. Patricia had petitioned for the contribution, alleging that as of May 1, 1985, she only had $72,000 cash in financial institutions and an IRA worth $52,100. At the June 14, 1985, hearing she testified that only $27,000 of the $72,000 was left.

Jack Rowe claims it was a clear abuse of discretion to award her the $7,000 and that it was somehow improper for a different judge to make the award. We will not address the latter contention as it does not appear, from the record, that Jack Rowe objected to disposition of the issue by a judge other than the judge who presided at trial.

First, Patricia claims that because Jack has paid the $7,000, the matter is moot, citing *In re Brown*, 39 Ariz. 545, 8 P.2d 453 (1932). *Brown*, however, involves quite different facts. There, a husband was ordered to pay his wife certain monies after dissolution. When he did not pay, he was eventually incarcerated. While in jail, he brought a habeas corpus action contesting his confinement. He paid the money and was released from jail. The court held that because the payment had been made, his habeas corpus action was moot. A payment under orders of judgment does not moot an appeal. *Arizona Downs v. Superior Court*, 128 Ariz. 73, 623 P.2d 1229 (1981); *Del Rio Land, Inc. v. Haumont*, 110 Ariz. 7, 514 P.2d 1003 (1973).

Although at first glance we are inclined to agree with Jack Rowe that given the extensive findings of fact and conclusions of law, it was an abuse to award Patricia the $7,000, the record does offer support for the award. Jack's arguments mainly involve factual issues that the second judge was competent to resolve. The trial court, in its findings of facts and conclusions of law, did not consider any issues involving attorneys' fees or costs for appeal. Patricia's attorney testified that the fees for the appeal would amount to at least $25,000, not including costs, and the fees necessary to respond to Jack's cross-appeal would be $7,000 to $10,000. We might infer that the judge concluded that Patricia should bear her own costs and fees for her appeal but was entitled to the low estimate in order to respond to Jack's cross-appeal.

Jack Rowe places great weight on the "fact" that at the hearing Patricia was unable to account for approximately $190,000. Were this true, we might be more inclined to find an abuse of discretion. However, the somewhat confusing record is susceptible of an interpretation other than that offered by Jack.

Patricia received $547,500 from the sale of the marital residence. At the hearing, she testified, specifically, as to where $412,100 of that amount had gone. By affidavit, before the hearing, she stated that she had $72,000 cash in financial institutions; $15,000 of that amount is the cash surrender value of an insurance policy that she cannot immediately collect. Another $23,000 was placed in a real estate investment. There is then a $7,000 discrepancy between the $34,000 balance calculated by simple subtraction and the $27,000 that she testified she had left at trial. If the $72,000 came out of the house proceeds, that still leaves approximately $63,000 unexplained. Patricia, by affidavit, testified that she spent approximately $6,000 a month on living expenses. She received the house proceeds in December and the hearing was in June. That could account for $36,000 of this money. She also testified, at the June 14, 1985 hearing, that in addition to the payments she listed "There were a lot of bills left over that I caught up that we provided the Court with a list. That's all that I can think of right now." Given the claimed remaining $63,800 worth of debts, we cannot say that the trial court clearly abused its discretion by awarding her the $7,000.

## THE PENSION FUND

■ When the trial judge divided the community property, he ordered that Patricia receive the proceeds from the sale of

the marital residence after taxes, and that Jack Rowe receive the corporate pension plan. Because the pension plan was worth more than the equity in the marital residence, Jack owed Patricia a certain sum to "cash her out." The court did not consider any tax consequences in valuing the pension plan. Jack contends that the court's failure to consider these tax implications was erroneous.

Courts need not consider the speculative future effects of taxes or inflation in valuing pension plans. *Johnson v. Johnson,* 131 Ariz. 38, 638 P.2d 705 (1981). If the future maturity date is close to trial, and the tax consequences can be immediately and specifically determined, a court should consider such effects of taxation. *Koelsch v. Koelsch,* 148 Ariz. 176, 713 P.2d 1234 (1986); *Johnson v. Johnson,* supra.

The trial court specifically found that the tax consequences were too speculative and should not be taken into consideration in valuing either Patricia Rowe's or Jack Rowe's interest in the pension plan. Jack claims this finding was error, but can cite us to no support in the record for his contentions. In fact, a review of the testimony as to valuation of the pension plan indicates that different methods of disbursement are possible. Jack cites us to no portion of the record to demonstrate that he testified that he would definitely be taking the money on a specific date, in a specific manner, bearing specific costs. Therefore, we cannot find that the court's holding was erroneous.

The judgment is affirmed. Exercising our discretion, we hold that both parties shall bear their own costs and attorneys' fees on appeal.

HOWARD, P.J., and FERNANDEZ, J., concur.