908 P.2d 1086

**In re the Marriage of Roberta BURNETTE, Petitioner–Appellant,**

**v.**

**Bert A. BENDER, Respondent–Appellee.**

No. 1 CA–CV 94–0214.

Court of Appeals of Arizona, Division 1, Department A.

Dec. 19, 1995.

---

Cox Warneka Redmon by Brenda K. Warneka, Phoenix, for Petitioner–Appellant.

Vaughan & Becker, P.C. by Mathis Becker, Sun City, for Respondent–Appellee.

## OPINION

NOYES, Presiding Judge.

Appellee Bert A. Bender ("Father") and Appellant Roberta Burnette ("Mother") were married in 1971, had a child in 1975, and were divorced in 1980. In 1993 Father sold his commercial fishing boat and license for a $150,000 capital gain. Mother claimed that the capital gain was gross income and that Father's child support should be increased. The trial court disagreed and also denied Mother's request for attorney's fees. Mother appealed. We affirm the child support ruling and reverse the ruling regarding attorney's fees.

### Background

During and after the marriage, Father earned income as a professor at Arizona

State University in the school year and a commercial fisherman in Alaska in the summer. As relevant here, the 1980 decree of dissolution awarded Mother custody of the child, set Father's child support obligation at $300 per month, and awarded Father his "limited entry fishing permit" for Cook Inlet, Alaska, and his commercial fishing boat. Because Father's income from fishing was seasonal and fluctuated, the parties annually adjusted their child support obligation based on income from the prior year. For example, in 1992 Father earned $42,794 as a college professor and $52,722 as a commercial fisherman. In February 1993 the parties factored their 1992 income figures into the child support equation and, pursuant to stipulation, the court modified Father's child support obligation to $800 per month beginning August 1, 1992.

In May 1993 Father quit the commercial fishing business because he learned that fish runs for 1993 through 1996 were projected to be low, and that Alaska might restrict commercial fishing in Cook Inlet. Father sold his boat and license for $150,000. He declared the entire amount as capital gain on his 1993 tax returns because he had acquired the license at no cost and had built and equipped the boat at a cost he could no longer prove. After paying about $50,000 in income taxes on the capital gain, Father invested the remainder in annuities for his retirement.

Because the support order was based substantially on a source of income he would never again have, i.e., commercial fishing, Father filed a petition to reduce his child support obligation. Father did not include the $150,000 capital gain in his gross income. Mother countered with a petition that did include it, and requested that Father's child support be increased accordingly (to continue until the child graduated from high school in May 1994). After a hearing in January 1994, the trial court found and concluded as follows:

1. The Father was previously ordered to pay child support for [the child] in a stipulated Order dated February 8, 1993 that required the Father to pay $800.00 per month.

2. Since the entry of this Order, the Father has sold his fishing boat and fishing license. The Father used the fishing boat during the summer months to earn additional income, which formed the basis for the calculation of child support in February of 1993. That income is no longer available to the Father because of the decline in profitability in the fishing industry in the state of Alaska. The Father's decision to sell the fishing boat appears wise in that the prices of boats and licenses have declined since his sale.

This Court will not impute additional income to the Father beyond his salary as an ASU professor and his interest income. The decline in the Father's income does constitute a substantial and continuing change in circumstances that warrant modification of the child support.

3. The Mother has requested that this Court include within the Father's income an average of the capital gains which the Father realized as proceeds from the sale of his fishing boat and fishing license. The Father realized a $100,000.00 net gain from the sale of this fishing boat and license. Since this sale was a one time event and the Father will not receive additional capital gains from this asset, this Court declines to treat the proceeds from the sale of an asset as income.

Similarly, the Mother earned capital gains in 1993 of $10,000.00. For the same reasons, this Court declines to treat those capital gains as income to the Mother.

However, the Father will clearly receive five to six percent interest as income from the sale of his fishing boat and license. The Court will include this in the Father's income.

. . . .

7. In regard to the Father's gross income, THE COURT FINDS it consists of $3,650.00 per month from ASU, $150.00 per month as dividends, and $500.00 per month as interest on the Father's investments. The total is $4,300.00 per month. The parties' combined monthly gross income is $5,887.00. The basic support obligation is $753.00. The Court will adjust this for the following necessary expenses:

$25.00 for the medical insurance premium paid by the Father, and an additional $75.00 since [the child] is over the age of twelve.

The total support obligation is $853.00.

The Father earns 73% of the parties' combined incomes; the Mother, 27%. The Father's share of the total support obligation is $623.00; the Mother's share is $230.00. Less the medical insurance premium of $25.00, the Father's child support obligation is $598.00.

We have jurisdiction of the appeal pursuant to Arizona Revised Statutes Annotated ("A.R.S.") section 12-2101(E) (1994).

### Capital Gain

Mother argues that whether capital gains must be included in gross income when calculating child support is a question of law. Appellate review of questions of law is *de novo*. *State v. Chapple*, 135 Ariz. 281, 297 n. 18, 660 P.2d 1208, 1224 n. 18 (1983). Father argues that child support decisions are factual, and that we must affirm unless "the record [is] devoid of competent evidence to support the decision." *Platt v. Platt*, 17 Ariz. App. 458, 459, 498 P.2d 532, 533 (1972).

We find that the support issue in this case presents mixed questions of law and fact. We therefore accept the trial court's findings of fact unless they are clearly erroneous, and we draw our own legal conclusions from facts found or implied in the judgment. *Huskie v. Ames Bros. Motor and Supply Co.*, 139 Ariz. 396, 401, 678 P.2d 977, 982 (App.1984). We are not bound by findings on questions of law or mixed questions of law and fact. *Id.*

Mother argues that the capital gain in question is gross income pursuant to the Arizona Child Support Guidelines. As applicable to this action, section 5(a) of the Guidelines provides: "Gross income includes income from any source, and may include, but is not limited to, income from salaries, wages, ... [and] capital gains.... Seasonal, overtime, or fluctuating income shall be averaged." The Guidelines do not declare that every capital gain is gross income for child support purposes. The Guidelines do not

replace the exercise of trial court discretion; they focus it.

The guidelines are merely that, guidelines. They are to assist the trial courts of Arizona in applying the factors set forth in the statute [A.R.S. § 25-327(A) ]. The guidelines insure that child support awards are consistent for persons in similar circumstances. They operate as presumptions and thus are procedural in concept.

*Schenek v. Schenek*, 161 Ariz. 580, 581, 780 P.2d 413, 414 (App.1989).

A.R.S. section 25-327(A) (Supp.1995) provides that "the provisions of any decree respecting maintenance or support may be modified ... only upon a showing of changed circumstances which are substantial and continuing." The trial court found that Father met this showing and Mother did not: the substantial and continuing change shown was Father's loss of income from commercial fishing, not his one-time capital gain from selling his boat and license. The trial court determined that sale of the boat and license, in effect, replaced fishing income with interest income. We find no abuse of discretion in the trial court's determination that it was most equitable to regard the interest produced by the capital gain, rather than the capital gain itself, as the gross income and the substantial and continuing change in circumstances.

The decision in *Scott v. Scott*, 121 Ariz. 492, 591 P.2d 980 (1979), provides some support. In *Scott*, husband sought a reduction of alimony because his debts were up, his income was down, he had liquidated about $55,000 in pension plan funds, and his wife had reduced her expenses by selling the family home. *Id.* at 495, 591 P.2d at 983. The trial court found no grounds for modification, and the supreme court affirmed. In addressing the capital gain question, the court stated: "A transformation of [husband's] assets from one form to another is not, in and of itself, a changed circumstance.... As with the liquidation of [husband's] pension plans, the fact that [wife] sold her own asset is not, in and of itself, a changed circumstance." *Id.; see also Linton v. Linton*, 17 Ariz.App. 560, 564, 499 P.2d 174, 178 (1972) (holding

that distribution to each party of trust assets resulted in "the manner of their holding the property chang[ing] but this cannot be said to be a substantial change of circumstances" for modification of spousal maintenance).

*Erickson v. Erickson,* 409 N.W.2d 898 (Minn.App.1987), is more directly on point. There, a father with increased income argued that capital gains and losses should be included in the calculations and, if they were, his income had not changed for purposes of child support modification. *Id.* at 900. The court rejected this argument:

> Capital assets may enter into the determination of whether there has been a substantial change in circumstances to warrant a modification of a child support or maintenance obligation. However, there is no precedent to support appellant's view that capital gains must be treated as income. The gains do not represent earnings, and they are not a steady source of income.
>
> We conclude that although the court could have considered capital gains and losses in determining whether there had been a substantial change in circumstances and what amount of support was reasonable, there is no mandate to do so in a way that disregards an increase in the party's actual earnings.

*Id.* at 900–01 (citations omitted).

The cases on which Mother relies are distinguishable. In *Sieber v. Sieber,* 258 N.W.2d 754 (Minn.1977), husband sold his business for a sum payable at a monthly rate, thereby diminishing his future earning capacity. *Id.* at 757. The court found no substantial change in circumstances:

> It is true that as a general rule alimony payments are to be derived from "future income or earnings." Minn.St. 518.54, subd. 3. But, when an ex-husband voluntarily liquidates his business, a capital asset, and thereby diminishes his future earning capacity, we believe that it would be unjust to hold that he is automatically relieved of future alimony payments, even if it ultimately becomes necessary to pay the ex-wife a portion of the proceeds from the sale.

*Id.* at 757 n. 2. Any negative implications flowing from a voluntary business liquidation do not exist in Father's situation, where it is undisputed that he was making a prudent business decision to quit commercial fishing when he did. In addition, the *Sieber* court did not do what Mother requests here, i.e., add the capital gain to husband's gross income for the year of the sale.

■ Mother also relies on *Mabee v. Mabee,* 159 Vt. 282, 617 A.2d 162 (1992), which held that in child support calculations, "the court shall include in gross income only those capital gains realized from post-property-division appreciation of the property." *Id.* at 164. The capital gain in *Mabee* came from sale of "various stocks and real property." *Id.* at 163. The *Mabee* court focused on how much of the gain was gross income for child support purposes, not on whether any of it should be. *Id.* at 164. *Mabee* does not explicitly hold that Vermont's Guidelines require that all post-property-division capital gains be included in gross income, and we would not adopt such a holding. As we have found here, a trial court may properly conclude in some cases that a capital gain represents neither a continuing change of circumstances nor gross income for purposes of modifying child support orders.

### Attorney's Fees

■ Mother requested relief pursuant to A.R.S. section 25–324 (1991), which provides, in part:

> The court from time to time, after considering the financial resources of both parties, may order a party to pay a reasonable amount to the other party for the costs and expenses of maintaining or defending any proceeding under this chapter. For the purpose of this section costs and expenses may include attorney's fees, deposition costs and such other reasonable expenses as the court finds necessary to the full and proper presentation of the action, including any appeal.

"Under § 25–324, the court's sole consideration relates to the parties' financial resources." *Rowe v. Rowe,* 154 Ariz. 616, 622, 744 P.2d 717, 723 (App.1987). "This statute was designed to assure the poorer party a

remedy." *Edsall v. Superior Court,* 143 Ariz. 240, 249, 693 P.2d 895, 904 (1984). An award of attorney's fees under section 25–324 is within the trial court's sound discretion and will not be disturbed on appeal unless we find an abuse of discretion. *See In re Marriage of Berger,* 140 Ariz. 156, 167, 680 P.2d 1217, 1228 (App.1983).

■ The trial court ordered that, because of their comparative financial resources, each party was to bear its own attorney's fees and costs. Mother's monthly gross income was $1587; Father's was $4300. Mother's capital gain was $10,000; Father's was $150,000. Father had about three times the income of Mother and far more financial resources; Mother had relatively low income, modest financial resources, and a high school student at home. Mother seems obviously in need of reasonable relief pursuant to A.R.S. section 25–324, and the only reason given for denying that relief is unsupported by the record.

■ Mother was not the prevailing party, but that factor is irrelevant to section 25–324. True, the prevailing party factor is relevant to section 12–2453(D) (Supp.1995) ("The order of modification or revocation [of child support] may include an award of attorney's fees and court costs to the prevailing party."). But neither party invoked section 12–2453(D) in the trial court. Mother's request for fees and costs was based solely on section 25–324, and Father's was based solely on section 12–341.01(A) (1992), which is irrelevant to a child support action. *See Rowe,* 154 Ariz. at 622, 744 P.2d at 723. On this record, therefore, section 12–2453(D) is not an issue in our review of the trial court's exercise of discretion pursuant to section 25–324. *See Wagenseller v. Scottsdale Memorial Hosp.,* 147 Ariz. 370, 391, 710 P.2d 1025, 1046 (1985) (requiring party seeking attorney's fees on "prevailing party" theory to put other party on notice before "each stage of the law suit"); *see also Western Sun Contractors Co. v. Superior Court,* 159 Ariz. 223, 232, 766 P.2d 96, 105 (App.1988) (refusing to allow party to make a post-trial shift in statutory theory for its attorney's fees request).

In the trial court and on appeal, Father's main argument was that Mother's request for fees and costs should be denied because of her "intransigence [by requesting a hearing] which resulted in prolonged litigation when the issue was not complex and the evidence uncontested." This is no legal reason to deny relief pursuant to section 25–324. *See Standage v. Standage,* 147 Ariz. 473, 478, 711 P.2d 612, 617 (App.1985) ("Admittedly, the obstreperous litgant should in some manner pay for his conduct, but not pursuant to A.R.S. § 25–324."). Furthermore, the facts do *not* support an "intransigence" argument in this case. The trial court made no such findings regarding this two-witness, half-day hearing, and we find more apparent merit in Mother's litigation than in Father's suggestion that she deserved some sort of sanction. At the end of the hearing, the court said to counsel: "I really appreciate the memorand[a] which you submitted to me. . . . [I]t's always a pleasure to conduct a hearing with attorneys that are as well prepared as you both are." Attorney preparation takes time, and the money to pay for it.

Finding no support in the record for a total denial of Mother's request for attorney's fees and costs pursuant to A.R.S. section 25–324, we find an abuse of discretion. The reasonableness of Mother's attorney's fees and costs and the amount of any award are matters for the exercise of trial court discretion on remand.

### Conclusion

The judgment of the trial court is affirmed, except that the denial of Mother's request for attorney's fees and costs pursuant to section 25–324 is reversed and remanded. Mother's similar request on appeal is granted, in an amount to be determined by the trial court. Father's request for attorney's fees and costs on appeal pursuant to A.R.S. sections 25–324, 12–2453(C) (renumbered as subsection (D)), and 12–2106 (1994), and Rule 25, Arizona Rules of Civil Appellate Procedure, is denied.

GERBER and CONTRERAS, JJ., concur.