311 P.3d 1110

**In re the Marriage of CHRISTOPHER K., Petitioner/Appellant,**

v.

**MARKAA S., Respondent/Appellee.**

No. 1 CA–CV 12–0305.

Court of Appeals of Arizona, Division 1, Department A.

Oct. 31, 2013.

Law Office of Scott E. Boehm, P.C. by Scott E. Boehm, Phoenix, and Hildebrand Law, P.C. by Christopher S. Hildebrand, Scottsdale, Cocounsel for Petitioner/Appellant.

Hymson Goldstein & Pantiliat, PLLC by Yvette D. Ansel, Jennifer B. Rubin, Scottsdale, Attorneys for Respondent/Appellee.

## OPINION

SWANN, Judge.

¶ 1 This is an appeal [1] from the denial of a petition for modification of custody [2] and relocation. We hold that when physical discipline of a child is at issue in a custody proceeding, the court must determine expressly whether the discipline rises to the level of domestic violence. And when domestic violence is found, A.R.S. § 25–403.03 requires that the court accord the issue "primary importance" and treat the evidence as contrary to the best interests of the child. We further hold that the family court may not rely exclusively on the testimony and report of a custody evaluator to make the findings necessary to support a decision concerning modification of custody and relocation of a child.

¶ 2 Father sought to relocate his children from their mother's residence in Arizona to his residence in Minnesota, alleging that Mother had allowed her husband ("Stepfather") to abuse the children. When a custody evaluator interviewed Stepfather, he admitted to several acts that could have constituted domestic violence against the children. But the court did not give the evidence of domestic violence the consideration required by A.R.S. § 25–403.03, and it did not independently decide the children's best interests under A.R.S. § 25–403. We therefore vacate the order denying Father's

petition and remand for a new evidentiary hearing.

## FACTS AND PROCEDURAL HISTORY

¶ 3 Mother and Father married in 1996 and together had two children, J. and R., in 1999 and 2002. In 2006, Father moved out of the family's Minnesota home, Mother and the children moved to Arizona, and Father filed a petition in the Minnesota district court for dissolution of the marriage. In 2008, the Minnesota court entered a decree of dissolution granting the parties joint legal custody of the children, awarding Mother sole physical custody, and ordering parenting time for Father. Mother married Stepfather shortly thereafter and domesticated the decree in Arizona the next year.

¶ 4 In February 2011, Father petitioned the Maricopa County Superior Court for temporary and permanent modification of custody of J. and R. Father alleged that a modification of custody was necessary because Mother had failed to protect J. and R. from Stepfather. Specifically, Father alleged that Stepfather had: choked and shoved J. against a wall; thrown J. into a bathtub and forced him to stand under a cold shower; forced J. to eat his own vomit; forced R. to sleep overnight in a bathtub; thrown water on R. and forced him to sleep in a wet bed; and intentionally struck R. with a shovel handle.

¶ 5 The court denied Father's petition for a temporary modification of custody, finding that the children were "not in serious danger or [imminent] risk of harm" and there was "no reason to change custody at this point without a full evidentiary hearing on the issues of modification." The court granted Father's motion to transfer jurisdiction to Maricopa County, and appointed a custody evaluator.

¶ 6 The custody evaluator interviewed Father, Mother, Stepfather, the children and

---

1. To safeguard the identities of the minor children, it is ordered that the clerk of this court shall amend the caption of this appeal as shown above. It is further ordered that the above caption shall be used on all future documents filed in this matter.

2. Legal custody is now known as "Legal decision-making."

others, and observed Father and Mother interact with the children. The custody evaluator authored an extensive report detailing the interviews and her observations.

¶ 7 The custody evaluator reported that J. and R. confirmed some version of many of the abusive episodes alleged in Father's petition. J. described two experiences: Stepfather using his arm on J.'s neck to push him against a wall after J. called him a name (after which Mother required J. to write a note stating that the incident did not occur), and Stepfather placing J. under a running shower after J. refused to kiss him. R. also described two experiences: Stepfather threatening to make R. eat regurgitated food, and Stepfather making him sleep in a bathtub one night after he wet the bed. R. further reported Stepfather using a hand to spank him and to pinch him on the back of the neck.

¶ 8 The custody evaluator reported that Stepfather admitted some version of several of the alleged incidents. First, Stepfather admitted that he had placed J. in a shower after J. had refused to hug him, made a vulgar statement to or about Mother, and refused to apologize. According to Stepfather, he turned the water on and off quickly over J., gave J. a towel, and spoke to him about what J. liked and disliked about both Arizona and Minnesota, where he had visited Father a few days before. Stepfather told the custody evaluator that he knew he acted inappropriately, had never before disciplined J. in this way, and did it because he did not know how to reach J. Second, Stepfather admitted that he had told R. that his bed would be made in the bathtub if R.'s incontinence problems continued, and one evening R. was required to stay in the bathtub, with towels and blankets and with Mother in the bathroom, for about twenty minutes. Third, Stepfather admitted that he had once tossed a lidded cup of water to R. after R. threw the cup on the ground, and R. had complained that the water got on his pajamas. Fourth, Stepfather admitted that he had tapped R. on the head with a shovel handle, after R. accidentally hit J. with a shovel handle and laughed when J. cried. Stepfather also disclosed that since Father filed his petition,

Stepfather had helped Mother treat a blemish on R.'s face by holding R.'s hands together when he refused to stay still.

¶ 9 The custody evaluator found that Stepfather's "style of parenting/disciplining the children" was "concerning" and was "certainly viewed by the children as frightening and intimidating," and that Mother had allowed the "questionable" behavior. The custody evaluator noted in her report that Child Protective Services ("CPS") had investigated many of the incidents she discussed with the family, and that though CPS had closed the case as unsubstantiated, the case manager had voiced concerns about Stepfather's parenting techniques and had recommended that Stepfather and Mother attend parenting classes. She was further concerned that Father had been ordered to counseling in the past; and also that he might be coaching J. about what to say to her. The evaluator ultimately recommended that Father be awarded custody of the children.

¶ 10 The court admitted the custody evaluator's report into evidence at the evidentiary hearing on Father's petition for permanent custody modification. The custody evaluator was also the principal witness at the hearing. She reiterated her concerns about Stepfather's parenting techniques, but testified that she no longer knew what she would recommend regarding custody because Stepfather and Mother were making progress in family counseling.

¶ 11 The family counselor, who had begun meeting with Mother, Stepfather and J. shortly after Father petitioned for change of custody, confirmed that Stepfather was making progress. The counselor acknowledged that Stepfather could at times be "somewhat reactive in his parenting approach with [J.]," and had admitted to placing J. in the shower and to pushing and holding J. against a wall. But the counselor reported that Stepfather denied having struck J. during a recent altercation that had resulted in a call to the police, and opined that he saw no reason for the children to be removed from Stepfather and Mother's home.

¶ 12 After the custody evaluator and the counselor testified, Father testified briefly. Father testified that a different division of

the superior court had recently granted primary physical custody of Stepfather's biological children to their mother. Father admitted that he had made disparaging remarks to the children about Mother's religion and testified that Mother had called him names in inaudible portions of years-old recordings that she offered into evidence. Neither Mother nor Stepfather testified.

¶ 13 At the conclusion of the hearing, the court denied Father's petition to modify custody and relocate the children. The court stated that with respect to the findings required by A.R.S. §§ 25–403 and 25–408, it "incorporate[d] ... by reference" the findings that the custody evaluator made in her report. The court concluded that it was in the children's best interests to remain in Arizona, but warned Mother:

Now, to mom, you've got to step up. All right? And basically, if you see that there is an escalation of the current husband and the children, you have to step as a parent, step up as a parent and say one of you has got to go. And you can't do this.

And I tell parents day in and day out, there's one relationship that I am obliged to protect, and that's the relationship dad has with his kids and mom has with those kids, not step-dad, not step-mom, not anyone else. That's the two relationships I am obligated to protect.

And quite frankly, mom, it may come down to—if you make the choice. And I've got several cases recently where the choice has been not the children, then we'll deal with that eventuality, but you need to step up. You need—first of all, no one lays a hand on these kids. Period. You're going to parenting classes. Learn a different type of discipline, plain and simple.

Quite frankly, I grew up in the corporal punishment age. It continued through high school. We used to take great pride in the number of swats we would get, but now, you can't even touch a student. Life changes. Get used to it. But no one

touches these children: Not you, not your husband. Any questions about that, mom? And you need to step up. One of the things that I read that was somewhat disconcerting was the children don't feel like you're going to protect them. And when a child feels that way, that's got to work on them somehow.

¶ 14 Father timely appeals the court's ruling.

## DISCUSSION

¶ 15 We review the superior court's decision on child custody for abuse of discretion. *Pridgeon v. Superior Court (LaMarca)*, 134 Ariz. 177, 179, 655 P.2d 1, 3 (1982). When considering a petition for change of custody, the court must first determine whether there has been a change in circumstances materially affecting the child's welfare. *Black v. Black*, 114 Ariz. 282, 283, 560 P.2d 800, 801 (1977). If the court finds such a change in circumstances, it must then determine whether a change in custody would be in the child's best interests. *Id.*

¶ 16 Among the factors that the court must consider when determining a child's best interests is "[w]hether there has been domestic violence or child abuse pursuant to § 25–403.03." A.R.S. § 25–403(A)(8).[3] Under A.R.S. § 25–403.03(B), domestic violence carries substantial weight in the calculus:

The court shall consider evidence of domestic violence as being contrary to the best interests of the child. The court shall consider the safety and well-being of the child and of the victim of the act of domestic violence *to be of primary importance.* The court shall consider a perpetrator's history of causing or threatening to cause physical harm to another person.

(Emphasis added.)[4]

¶ 17 Under A.R.S. § 13–3601, domestic violence includes any act committed by a stepparent that constitutes criminal assault un-

---

3. At the time of the court's ruling, A.R.S. § 25–403(A)(8) was numbered A.R.S. § 25–403(A)(11). *See* 2012 Ariz. Sess. Laws, ch. 309, § 5 (2d Reg.Sess.).

4. Different subsections of the statute specifically address parent-on-parent domestic violence and domestic violence by a parent. *See* A.R.S. § 25–403.03(D)–(F). Those subsections are inapplicable here because Stepfather is not J. and R.'s parent.

der A.R.S. § 13–1203, unlawful imprisonment under A.R.S. § 13–1303, or child abuse under A.R.S. § 13–3623. Child abuse may include the infliction of physical injury or emotional damage. A.R.S. §§ 8–201(2), 13–3623(B), (F)(1). Based on Stepfather's undisputed admissions to the custody evaluator and the family counselor, he committed several acts against J. and R. that a court might find constituted domestic violence and child abuse. These include forcing J. to stand against a wall, placing J. under a running shower, and intentionally striking R. on the head with a shovel handle. *See* A.R.S. §§ 13–1203, –1303, –3601, –3623. Stepfather's alleged acts of forcing a child to eat regurgitated food and to sleep in a bathtub, if proven, also could constitute domestic violence and child abuse. *See* A.R.S. §§ 8–201, 13–1303, 13–3601, 13–3623.[5] On remand, the court should consider the evidence of Stepfather's conduct and the effect on the children to determine whether these statutory definitions are satisfied.

█ ¶ 18 To determine the child's best interests, the court must consider all relevant factors, including those enumerated in A.R.S. § 25–403(A). When custody is contested, the court must make specific findings about the factors and the reasons why its decision serves the children's best interests. A.R.S. § 25–403(B); *Owen v. Blackhawk*, 206 Ariz. 418, 421, ¶ 11, 79 P.3d 667, 670 (App.2003). Specific findings are required regardless of whether the court decides to grant or deny the petition. *See In re Marriage of Diezsi*, 201 Ariz. 524, 526, ¶ 5, 38 P.3d 1189, 1191 (App.2002). And failure to make the specific findings constitutes an abuse of discretion. *Id.*[6]

¶ 19 If the court finds domestic violence, then it must be treated as a factor of "primary importance" weighing in favor of grant-

ing Father's petition under A.R.S. § 25–403.03(B). Though domestic violence directed at the children might not be dispositive per se, denial of the petition in the wake of a finding of domestic violence must be justified by specific findings on the record demonstrating the reasons for the court's decision. Here, the absence of findings concerning domestic violence constitutes an abuse of discretion.

█ ¶ 20 The manner in which the court received evidence and entered its findings compels us to address a more general issue relating to the conduct of evidentiary proceedings in family court. We begin with the proposition that the responsibility to make the findings is the court's alone. *DePasquale v. Superior Court (Thrasher)*, 181 Ariz. 333, 336, 890 P.2d 628, 631 (App.1995) ("The best interests of the child … are for the court alone to decide."). Though the court may consider an expert's opinion, it "can neither delegate a judicial decision to an expert witness nor abdicate its responsibility to exercise independent judgment." *Id.* The court itself must weigh the evidence—it cannot simply adopt a custody evaluator's report as establishing a presumptive result. *Nold v. Nold*, 232 Ariz. 270, 273–74, ¶ 14, 304 P.3d 1093, 1096–97 (App.2013).

¶ 21 Here, the court simply incorporated the custody evaluator's "findings" by reference.[7] The court described neither the custody evaluator's conclusions nor the evidence that it believed supported them. And the court did not explain why it believed the content of the custody evaluator's report was correct. This is especially important here, because the evaluator herself reached two opposite conclusions based upon essentially the same body of evidence. By simply adopting the custody evaluator's report, the

5. Section 8–201(2) defines abuse of a child to include emotional damage "evidenced by severe anxiety, depression, withdrawal or untoward aggressive behavior and … diagnosed by a medical doctor or psychologist."

6. Contrary to Mother's contention, the issue of the lack of findings is not waived by a party's failure to object in the superior court. This is because the findings requirement not only allows effective appellate review, but also provides the

superior court with necessary baseline information against which to measure future petitions for changes in custody. *In re Marriage of Reid*, 222 Ariz. 204, 208–10, ¶¶ 16–20, 213 P.3d 353, 357–59 (App.2009).

7. A custody evaluator may offer expert testimony, but neither the facts she reports nor her conclusions are "findings" as required by A.R.S. § 25–403.

court effectively delegated the best-interests determination to the custody evaluator.

¶ 22 We recognize that family court proceedings such as these are fact-intensive, and that the time available to the court for each case is often too short. But there is simply no substitute for the court's evaluation of the credibility of witness testimony. When determining child custody and best interests, the court is sometimes required to compare and choose between parents and homes. And when the parents dispute the facts that inform the court's choice, their credibility becomes of paramount importance. Here, the issues confronting the court could not be resolved without evaluating, at a minimum, the credibility of the parents and stepparents. Yet essentially all of the material evidence in this proceeding came from the evaluator.

¶ 23 To make the necessary findings in the circumstances presented here, the court was required not only to determine who was telling the truth, but the degree to which Stepfather's abusive behavior was deleterious to these specific children. It is not possible to make those determinations adequately without testimony from witnesses with firsthand knowledge. *Cf. Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4, 53 P.3d 203, 205 (App.2002) (juvenile court is in best position to weigh evidence and assess witness credibility in severance proceedings); *see also* A.R.S. § 25–403.03(C)(7) (for purposes of custody determination, witness testimony is a factor the court must consider to determine if person has committed act of domestic violence). We recognize that the court cannot require the parties to present testimony from any particular witness. The court may find, however, that an absence of testimony constitutes a failure of proof regarding a specific issue.

## CONCLUSION

¶ 24 We vacate the order denying Father's petition for modification and remand for a new evidentiary hearing. On remand, the court is to independently consider and make express findings on each of the factors prescribed by A.R.S. §§ 25–403(A), 25–403.03(B) and 25–408(H).

¶ 25 In the exercise of our discretion, we deny Mother's request for attorney's fees on appeal.

CONCURRING: PATRICIA A. OROZCO, Presiding Judge and KENT E. CATTANI, Judge.