NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Marriage of:

DARLENE LOIS RICHERT, *Petitioner/Appellee*,

*v.*

ARTHUR WILBUR BUCK, *Respondent/Appellant*.

No. 1 CA-CV 15-0698 FC
1 CA-CV 16-0051 FC
(Consolidated)
FILED 1-5-2017

Appeal from the Superior Court in Maricopa County
No. FC2013-052900
The Honorable Cynthia Bailey, Judge

**AFFIRMED**

COUNSEL

Tiffany & Bosco, PA, Phoenix
By David L. Rose, Laura Lynn Wochner
*Counsel for Petitioner/Appellee*

David Dick and Associates, Chandler
By David A. Dick
*Counsel for Respondent/Appellant*

---

## MEMORANDUM DECISION

Judge Rick A. Williams[1] delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Lawrence F. Winthrop joined.

---

**W I L L I A M S**, Judge:

¶1        Arthur Wilbur Buck ("Husband") appeals from the decree of dissolution of marriage.  Raising several issues, he argues the court abused its discretion in adopting the decree as to parenting time, child support, spousal maintenance, and attorneys' fees.  For the following reasons, we affirm.

## BACKGROUND

¶2        Husband and Darlene Lois Richert ("Wife") were married in 1989 and have two daughters; D.B. (born in 1998) and A.B. (born in 2003).  Wife filed a petition for dissolution of marriage in August 2013.  The parties entered a binding mediation/arbitration agreement to resolve all potential issues and, at Husband's request, attorney John Zarzynski was appointed to facilitate those conferences.

¶3        During the first mediation in January 2014, the parties agreed to joint legal decision-making and equal parenting time ("Parenting Plan").  Husband lodged the Parenting Plan, and the court adopted it, without objection.  At a status conference in March 2014, the court found that the remaining disputed issues included "child support, spousal maintenance, attorneys' fees, and personal property."  No objection was raised, and at the second mediation in May 2014, the parties reached a Rule 69 Agreement ("Property Agreement") resolving property and debt allocation.  Husband lodged the Property Agreement, and it was adopted by the court, again without objection.  In lieu of trial on the remaining issues, the parties stipulated to and the court ordered "binding and non-appealable arbitration" to be "conducted in accordance with the Arizona Arbitration Act as set forth in A.R.S. §§ 12-1501 to 12-1518."

---

[1]        The Honorable Rick A. Williams, Judge of the Arizona Superior Court, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

**¶4** Arbitration was held in September 2014. Husband and Wife were present, represented by counsel, and each had the opportunity to testify and offer exhibits. The arbitrator issued his decision in October 2014 ("Arbitration Ruling"), finding, in pertinent part, that (1) Husband did not qualify for spousal maintenance; (2) Wife was required to pay child support effective February 1, 2014; and (3) neither party was entitled to attorneys' fees. Husband objected to the Arbitration Ruling, claiming several issues were either not resolved or resolved incorrectly. After full briefing by the parties, the court denied Husband's motion and affirmed the Arbitration Ruling.

**¶5** Husband then filed a petition to modify parenting time, asserting a "substantial change of circumstances" warranted modification of the previously agreed to Parenting Plan because it was "now in the children's best interests to live primarily with" Husband. The court dismissed Husband's petition without prejudice. Husband's motion for reconsideration was also denied. In December 2015, the court approved the Decree of Dissolution ("Decree"), incorporating the Parenting Plan, Property Agreement, and Arbitration Ruling reached at the two mediations and arbitration. Husband timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1).

## DISCUSSION

**¶6** Throughout his brief, Husband argues that we should reject the factual findings and legal conclusions reached by the arbitrator and the court. Generally speaking, we do not as part of our review reweigh the conflicting evidence, but rather determine whether substantial evidence exists to support the trial court's decision. *Rowe v. Rowe*, 154 Ariz. 616, 620, 744 P.2d 717, 721 (App. 1987).

## I.     Parenting Time

**¶7** Husband argues the trial court erred in adopting the equal parenting time arrangement agreed to in the Parenting Plan and incorporated into the Decree. Specifically, Husband claims the court erred in not finding that a change in circumstances warranted modification, and in refusing to grant him a hearing on the matter.

**¶8** In considering a motion to modify parenting time, the trial court "must first determine whether there has been a change in circumstances materially affecting the child's welfare," and only if such change exists, then evaluate whether modification "would be in the child's best interests." *Christopher K. v. Markaa S.*, 233 Ariz. 297, 300, ¶ 15, 311 P.3d

1110, 1113 (App. 2013) (citing *Black v. Black*, 114 Ariz. 282, 283, 560 P.2d 800, 801 (1977)). The court's discretionary determination regarding whether a change in circumstances has occurred "will not be reversed absent a clear abuse of discretion, *i.e.*, a clear absence of evidence to support its actions." *Pridgeon v. Superior Court*, 134 Ariz. 177, 179, 655 P.2d 1, 3 (1982). The party seeking modification of parenting time has the burden of proving a change in circumstances materially affects the child's welfare. *Marley v. Spaulding*, 10 Ariz. App. 213, 215, 457 P.2d 753, 755 (1969).

**¶9**　　　　First, Husband asserts that sufficient evidence showed a change in circumstances materially affected the children's welfare and modification was in their best interests. Husband filed his petition to modify parenting time, along with his supporting affidavit, in April 2015; 15 months after the Parenting Plan was adopted by the court. He alleged, in pertinent part, that the children no longer wished to live with Wife and that their counselor found they were "emotionally unsafe" around Wife because she (1) loses her temper and disciplines them too harshly by removing or threatening to remove their cellular telephones and driving privileges, (2) has "relationships with numerous other men," and (3) disparages Husband in front of them and posts such remarks on social media. Wife did not file a response or controverting affidavit and, aside from his affidavit, Husband provided no evidence supporting his factual assertions, such as a report from the children's counselor or copies of the actual social media posts. Nor did Husband request the court conduct an in-camera interview of the children to assess their wishes.

**¶10**　　　　In an unsigned minute entry, the court dismissed the petition without prejudice, finding that Husband had "not alleged a material change in circumstances that affects the welfare" of the children, and therefore, "further inquiry is not required."[2] Based on this record, we

---

[2]　　　The trial court's minute entry states Husband "fail[ed] to make the threshold showing required by A.R.S. § 25-411(A)." Under § 25-411(A), if a parenting time order is in effect for less than one year, a parent may not petition the trial court for modification unless "the child's present environment may seriously endanger the child's physical, mental, moral or emotional health." The Parenting Plan was in effect for 15 months when Husband petitioned for modification. It appears that although the court cited the wrong statute and standard for orders in effect less than one year, it applied the correct standard in considering a petition to modify for orders more than one year; *i.e.*, "material change in circumstances affecting the child's welfare." As such, we do not address Husband's argument that by

4

cannot say the court abused its discretion by concluding that these allegations did not constitute a change in circumstances affecting the children's welfare. And, because the court found Husband did not meet his burden to show changed circumstances, it was not required to perform a best interests analysis under A.R.S. § 25-403. *See Christopher K.*, 233 Ariz. at 300, ¶ 15, 311 P.3d at 1113.

**¶11** Next, Husband argues the trial court was statutorily required to hold a hearing on his motion to modify, and by refusing to do so, "failed to follow the clear law and apply it [to] the facts of this case." Upon a party's motion to modify parenting time, the trial court "shall deny the motion unless it finds that adequate cause for hearing the motion is established by the pleadings." A.R.S. § 12-411(L). In determining whether adequate cause exists, the court conducts an in-camera screening of the petition and supporting affidavits; no hearing is required at the screening stage. *See DePasquale v. Superior Court*, 181 Ariz. 333, 335, 890 P.2d 628, 630 (App. 1995). The petitioner has the burden to establish adequate cause through detailed facts, not simply conclusory allegations. *See Pridgeon*, 134 Ariz. at 181, 655 P.2d at 5. As stated above, Husband provided only his affidavit containing conclusory accusations. In this case, the court could reasonably have concluded that Wife's alleged discipline practices, personal relationships, and remarks about Husband (even assuming they occurred) did not establish adequate cause for a hearing and Husband failed to meet his burden.

**¶12** Moreover, the trial court dismissed Husband's petition to modify parenting time without prejudice. Thus, Husband was free to refile with new and/or additional evidence supporting his factual assertions. *See Airfreight Express Ltd. v. Evergreen Air Center, Inc.*, 215 Ariz. 103, 108, ¶ 13, 158 P.3d 232, 237 (App. 2007) (stating that dismissal without prejudice is not adjudication on merits and does not bar second action under doctrine of claim preclusion).[3] Yet, he did not do so. Husband filed a motion for

---

merging the January 2014 Parenting Plan into the December 2015 Decree, the court "restarted the clock on when the Parties can move to modify without showing an emergency exists."

[3] Husband argues the trial court erred "in applying res judicata and precluding a hearing of the best interest issue, when the evidence plead [sic] by affidavit established circumstances were different" from the January 2014 Parenting Plan to the April 2015 petition for modification. Res judicata, also known as claim preclusion, is defined as "[a]n issue that has

reconsideration, in which he repeated the same arguments and cited only to his affidavit filed with his original motion to modify. He did not file a new petition or otherwise furnish the court with new or additional evidence that would substantiate any of his claims. Accordingly, the trial court did not abuse its discretion in denying Husband's petition to modify because he failed to show a substantial change in circumstances materially affected the welfare of the children.

## II. Hearing on Alleged Unresolved Issues

¶13 Husband argues the trial court erred by refusing to grant him a hearing on issues allegedly unresolved after the arbitration.

¶14 Husband appears to be disputing the factual determinations in the Arbitration Ruling as to the circumstances surrounding Husband's unemployment and the start date of child support.[4] Husband first challenges the arbitrator's finding that he voluntarily quit his job, arguing that Wife improperly made this assertion during arbitration proceedings without having provided any disclosure, and that the arbitrator thus improperly attributed to Husband monthly income of $10,576. Husband further asserts that evidence proved he was unemployed without income from September through November 2013 while the children lived with him, and that the arbitrator accordingly should have ordered Wife to pay child support beginning prior to the February 1, 2014 start date.

¶15 Husband has not shown how lack of a hearing supports his position under these facts. Husband argues that because the parties' agreement to arbitrate did not specify exactly what issues were to be arbitrated and Wife made a new claim during arbitration that Husband voluntarily quit his job, he was "blindsided" and "unprepared." He

---

been *definitely settled by judicial decision*." *See Res Judicata*, Black's Law Dictionary (10th ed. 2014) (emphasis added). Because the trial court dismissed Husband's motion to modify parenting time without prejudice, it was not definitely settled by judicial decision. Therefore, Husband's claim the court erred in applying res judicata to preclude a hearing on best interests is without merit.

[4] Husband's additional claims of unresolved issues post-arbitration included in his Opening Brief and labeled as "Other Claims," "New Claim That Petitioner Had Paid Respondent Child Support Directly to Respondent," and "Misstatement of Arbitration Award," were settled with the trial court before this appeal.

contends this caused the arbitrator's erroneous factual findings. But the Parenting Plan was reached at mediation and adopted by the court in January 2014. At the status conference in March 2014, the court found that the remaining disputed issues were "child support, spousal maintenance, attorneys' fees, and personal property." Although Husband and Wife were not present at the status conference, their respective counsel were and neither objected to the court's findings. The Property Agreement was reached at the second mediation and adopted by the court, without objection, in May 2014. At that point, the only remaining disputed issues were child support, spousal maintenance, and attorneys' fees. In May 2014, the court set the trial date and ordered the parties to exchange disclosures as required by Arizona Rules of Family Law Procedure 49. The court also ordered the parties to file a joint pretrial statement to include (1) current financial affidavits, (2) completed worksheets using state child support guidelines for any disputed child support issues, and (3) the amount and duration of spousal maintenance requested and disputed.

¶16         In lieu of trial, the parties stipulated to binding non-appealable arbitration; thus, Rule 49 disclosures were not produced by either party. The stipulation itself did not list the issues to be arbitrated and neither party requested a court reporter. However, the record clearly reflects the parties were aware child support and spousal maintenance would be addressed through arbitration and belies Husband's contention he was somehow blindsided.

¶17         As described in the Arbitration Ruling, Husband testified at length about his employment status:

> Husband testified that for a period of time between 2009 and 2011, he commuted from Northern California to Arizona but that his job was primarily based in Northern California.
>
> . . . .
>
> Husband testified that upon his return to Arizona, he worked as a consultant for a short time for the "Lyle Anderson Company." Unfortunately, according to Husband, it never turned into a permanent job.
>
> . . . .
>
> He further testified that in mid August 2013, he was offered a job . . . the "Dove Mountain" job. He testified that it was his intent to split time between Phoenix and Tucson where the

job was based. He testified that his original agreement with his employer was to commute while he found a place to rent in Tucson. He further testified that the children were distressed and in counseling as a result of the breakup of their parents['] marriage. According to Husband, he was advised by the counselor not to be away from the girls. Finally, he testified that on his last commute to Tucson, he was 15 minutes late and his manager told him that his tardiness was unacceptable. When asked when he would be available full-time in Tucson, Husband told his manager that he was not going to be available full-time in Tucson after which, Husband testified, he was "terminated."

Exhibits produced at arbitration included financial affidavits, tax returns, bank statements, and a CPA income summary. Additionally, documents from Husband's most recent employer, Dove Mountain, were introduced, including an employment agreement, an email from the employer's CEO, and a "termination letter" dated November 13, 2013.[5]

**¶18** The arbitrator found that Husband's employment with Dove Mountain was not conditioned upon him living in Tucson full-time; his employer was aware of and agreed to Husband's commute from Phoenix to Tucson; the needs of the children did not require him to leave his employment; and he was terminated on November 13, 2013, although no reason was given. Contrary to Husband's contention, the arbitrator did not find Husband voluntarily quit his job, only that he was not convinced the loss of Husband's job was involuntary. The arbitrator found that Husband can be self-sufficient through appropriate employment and, based on his historic income, possessed adequate earning ability in the market place. In fact, Husband earned more than $286,000 in 2011; $366,000 in 2010; and $121,000 in 2009. From September 1, 2013 through December 31, 2013, Husband earned $42,307; accordingly, the arbitrator reasonably attributed monthly income to him for the average of $10,576.

**¶19** With respect to the effective date for child support, Husband asserts that because evidence at arbitration proved he was unemployed

---

[5]     Husband failed to supply this court with the arbitration exhibits. *See* ARCAP 11(C) (imposing duty on appellant to ensure record contains all documents deemed necessary for proper consideration of issues on appeal). As such, we presume the missing portions of the record support the arbitrator's findings. *State ex rel. Dep't. of Econ. Sec. v. Burton*, 205 Ariz. 27, 30, ¶ 16, 66 P.3d 70, 73 (App. 2003).

without income from September through November 2013 while the children lived with him, a February 1, 2014 start date for support is erroneous and there was "no reason to ignore the first five (5) months after the case was filed." Wife filed for dissolution in August 2013, the parties physically separated at the end of September 2013, and the children apparently lived with Husband in the marital residence from November 2013 through January 2014 until the parties entered the equal parenting time arrangement. As stated above, Husband had a monthly income of $10,576 in September and November 2013. The arbitrator reasonably found that because the parties began equal parenting time in late January 2014, February 1 was an appropriate effective start date.

¶20 The record reveals Husband was aware, well in advance of the arbitration date, that spousal maintenance and child support would be arbitrated, and his income and employment status would be relevant. Accordingly, the trial court did not err by finding (without a hearing) that the arbitrator "was within his authority to make factual findings regarding [Husband's] income in order to determine appropriate child support and spousal maintenance . . . ."

## III. Confirmation of Arbitration Award

¶21 Husband argues the trial court erred by accepting the Arbitration Ruling as to spousal maintenance and child support because (1) it was procured by undue means, corruption, or fraud; (2) the arbitrator exceeded his authority; or (3) the arbitrator refused to hear material evidence.[6]

¶22 "On appeal, we review a superior court's confirmation of an arbitration award for an abuse of discretion. We review matters of statutory construction *de novo*. Judicial review of arbitration awards is severely restricted." *Nolan v. Kenner*, 226 Ariz. 459, 461, ¶ 4, 250 P.3d 236, 238 (App. 2011) (internal citations omitted). We review the court's affirmation of an arbitration award in the light most favorable to upholding its decision and will affirm unless the court abused its discretion. *Atreus Cmtys. Grp. v. Stardust Dev., Inc.*, 229 Ariz. 503, 506, ¶ 13, 277 P.3d 208, 211 (App. 2012); *see also Hirt v. Hervey*, 118 Ariz. 543, 545, 578 P.2d 624, 626 (App. 1978)

---

[6] Husband's citation to A.R.S. § 12-3023 as justification for vacating the Arbitration Ruling is misplaced. A.R.S. § 12-3001, et. seq. applies only to the Revised Uniform Arbitration Act. As previously noted, the trial court ruled the arbitration would be conducted in accordance with the Arizona Arbitration Act.

("Arbitration awards are entitled to finality in all but narrowly defined circumstances such as fraud, corruption, or other prejudicial misconduct . . . . Our case law makes it clear that an arbitration award is not subject to attack merely because one party believes that the arbitrators erred with respect to factual determinations or legal interpretations.").

¶23     In Arizona, parties opposing an arbitration award can challenge it only on grounds defined by statute. *See Smith v. Pinnamaneni*, 227 Ariz. 170, 177, ¶ 24, 254 P.3d 409, 416 (App. 2011). As the party seeking to vacate the award, Husband has the burden of proof. *Pawlicki v. Farmers Ins. Co.*, 127 Ariz. 170, 173, 618 P.2d 1096, 1099 (App. 1980). "The boundaries of the arbitrators' powers are defined by the agreement of the parties. Within those boundaries, the arbitrators' decision is final both as to questions of fact and law." *Smitty's Super–Valu, Inc. v. Pasqualetti*, 22 Ariz. App. 178, 180, 525 P.2d 309, 311 (1974) (internal citations omitted); *see also Atreus*, 229 Ariz. at 506, ¶ 13, 277 P.3d at 211; *Transnational Ins. Co. v. Simmons*, 19 Ariz. App. 354, 358, 507 P.2d 693, 697 (1973) ("[A party] cannot ask that a matter be arbitrated and then later complain that the arbitrators exceeded their powers when they considered the same.").

¶24     Husband claims the Arbitration Ruling was procured by undue influence, corruption, or fraud under § 12-1512(A)(1) because Wife argued for the first time in arbitration that he voluntarily quit his job in violation of Rule 49 disclosure obligations. "To demonstrate undue means, a party must prove that the other party engaged in 'intentional misconduct.'" *Nolan*, 226 Ariz. at 461, ¶ 5, 250 P.3d at 238 (App. 2011) (citing *FIA Card Servs., N.A. v. Levy*, 219 Ariz. 523, 525, ¶ 7, 200 P.3d 1020, 1022 (App. 2008)). "The type of intentional misconduct contemplated by § 12-1512(A)(1) is equivalent in gravity to corruption or fraud and involves bad faith. *Id.* (internal quotations omitted). Here, because the parties stipulated to vacate trial and submit to arbitration, neither party was required to or in fact produced Rule 49 disclosures. Moreover, even if Wife incorrectly "suggest[ed] that Husband voluntarily left that employment in order to posture himself for an award of spousal maintenance," the arbitrator clearly documented his findings in this regard as based on "the totality of the evidence," including documentation from Dove Mountain and Husband's earning capacity. Thus, the Arbitration Ruling was not obtained through undue means.

¶25     Husband further contends the arbitrator exceeded his authority under § 12-1512(A)(3) because the arbitrator found (1) Husband voluntarily quit his job and he was blindsided because Wife raised this claim for the first time in arbitration; and (2) Husband had the ability to be

self-sufficient and denied him spousal support, which forced him to sell or mortgage his property. But in agreeing to binding, non-appealable arbitration, Husband was aware that spousal maintenance would be arbitrated, and that income and employment status would be relevant. Accordingly, the arbitrator did not exceed his powers when he considered those factors. *See Pasqualetti*, 22 Ariz. App. at 180, 525 P.2d at 311; *Atreus*, 229 Ariz. at 506, ¶ 13, 277 P.3d at 211; *Simmons*, 19 Ariz. App. at 358, 507 P.2d at 697.

¶26 Lastly, Husband argues the arbitrator refused to hear evidence material to the controversy so as to substantially prejudice his rights under § 12-1512(A)(4). He claims that when he tried to testify about the circumstances of his employment termination, Wife objected, and the arbitrator refused to allow him to testify. As discussed above, the detailed Arbitration Ruling reflects Husband was permitted to testify extensively. The trial court did not abuse its discretion in adopting the Arbitration Ruling.

## IV. Attorneys' Fees

¶27 Husband contends that the arbitrator erred in denying his request for attorneys' fees. Additionally, both parties request attorneys' fees and costs on appeal.

¶28 A court may order a party to pay the other party's reasonable costs and expenses incurred in defending a domestic relations proceeding "after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings." A.R.S. § 25–324(A). In declining to award attorneys' fees, the arbitrator found "that the parties are in similar financial circumstances" and, although he was "a bit more concern[ed] over the behavior of Husband," both parties held "reasonable positions on the contested issues." The record supports the arbitrator's decision and we find no abuse of discretion. Further, in the exercise of our discretion, we deny both requests for attorneys' fees on appeal. As the prevailing party, however, we award taxable costs to Wife upon compliance with ARCAP 21.

## CONCLUSION

¶29 Because substantial evidence exists supporting the trial court's adoption of the Decree, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:  AA