NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

MICHAEL GRIEBEL, *Petitioner/Appellee*,

*v.*

TIFFANY PHILLIPS, *Respondent/Appellant*.

No. 1 CA-CV 23-0121 FC
FILED 2-8-2024

Appeal from the Superior Court in Maricopa County
No. FC2015-090277
The Honorable Christopher A. Coury, Judge

**VACATED AND REMANDED IN PART; AFFIRMED IN PART**

COUNSEL

Slaton Roebuck PLLC, Scottsdale
By Sandra L. Slaton, Kristin Roebuck Bethell, Isaac Gilbert
*Counsel for Respondent/Appellant*

**MEMORANDUM DECISION**

Chief Judge David B. Gass delivered the decision of the court, in which Presiding Judge Michael J. Brown and Judge Andrew M. Jacobs joined.

**G A S S**, Chief Judge:

¶1          Mother appeals the post-decree orders awarding joint legal decision-making to father, awarding father parenting time with the two younger children, allocating professional fees between mother and father, and deviating child support to zero. We affirm the child support order. Because the orders lacked specific findings of fact and conclusions of law despite mother's request for them under Rule 82(a), Arizona Rules of Family Law Procedure, we vacate and remand the legal decision-making, parenting-time, and fee-allocation orders.

## FACTUAL AND PROCEDURAL HISTORY

¶2          Mother and father married in 2008 and divorced in 2016. They have three children. At first, the parents stipulated to joint legal decision-making, equal parenting time, and no child support. In 2019, the superior court awarded father sole legal decision-making and reduced mother's parenting time to every other weekend and every Wednesday.

¶3          Within a year, mother sought emergency temporary orders and leave to modify the 2019 legal decision-making order. Mother alleged father physically and emotionally abused the oldest child. After an evidentiary hearing, the superior court found no serious threat to the oldest child's physical, mental, or emotional health and denied mother's request.

¶4          Mother later sought emergency temporary orders and to modify legal decision-making, parenting time, and child support. This time, she claimed father and his girlfriend physically and emotionally abused all three children. Mother also obtained an order of protection limiting father's contact with her and the three children. In her order-of-protection petition, mother claimed the children's babysitter told her the two older children said father had engaged in abusive behavior with the oldest child.

¶5          Before the superior court's hearing on mother's petition to modify, mother and father agreed to quash the order of protection and to have the three children live with mother. They also agreed to appoint a therapeutic interventionist and a custody evaluator. Based on the parents' stipulations, the superior court gave father supervised parenting time with the two younger children as recommended by the interventionist. Mother agreed to pay 75% of the interventionist's fees and 50% of the supervisor's fees.

¶6          Within six months, father sought new temporary orders. And the parents have been engaged in active litigation since. Mother appeals the

superior court's most recent orders. Those orders establish joint legal decision-making for all three children, but they award father final say as to the two younger children and mother final say as to the oldest child. The superior court also found it in the two younger children's best interests to start the Family Bridges intensive reunification program if father could afford his share of the cost. The superior court ordered father to pay 40% and mother 60% of the reunification and therapy costs.

¶7        Because it was unclear if father could afford his allocated share of the costs, the superior court issued two separate, alternative temporary orders. The first applied if father successfully arranged to start the Family Bridges program in the fall of 2022 ("the Family Bridges temporary order"). The second applied if father could not afford to start the Family Bridges program. In the second, the superior court ordered an alternative, five-phase parenting-time plan for the two younger children. The parenting time for the oldest child is not at issue on appeal.

¶8        As to child support, the superior court found application of the Child Support Guidelines led to father owing mother $756.00 a month. *See* A.R.S. § 25-320. The superior court found applying the Guidelines was inappropriate or unjust and deviating to a zero obligation was in the children's best interests because of the reunification and therapy costs.

¶9        Mother moved to alter or amend the above orders. Because the Family Bridges temporary order never took effect, the superior court denied that request as meritless.

¶10        This court has jurisdiction over mother's timely appeal of the legal decision-making, parenting-time, child support, and allocation of professional fees orders under article VI, section 9, Constitution of Arizona, and A.R.S. §§ 12-2101.A.1 and -120.21.A.1.

## DISCUSSION

¶11        On review of a superior court ruling, factual findings are sufficient "if they are 'pertinent to the issues and comprehensive enough to provide a basis for the decision.'" *Miller v. Bd. of Supervisors of Pinal Cnty.*, 175 Ariz. 296, 299 (1993) (citation omitted). "The reviewing court needs a sufficient factual basis that explains *how* [the superior court] actually arrived at its conclusion" to "effectively review [its] decision-making process." *Id.* When, as here, a parent timely requests findings of fact and conclusions of law under Rule 82(a), this court "must be able to determine the factual underpinnings of the [superior] court's ruling." *See Stein v. Stein*, 238 Ariz. 548, 550 ¶ 5 (App. 2015). To that end, the findings must explain

how or why the superior court settled on the decision it did. *See id.* at 551 ¶ 11.

## I.      Waiver

**¶12**      This court may, but need not, treat father's failure to file an answering brief as a confession of error. *In re Marriage of Diezsi*, 201 Ariz. 524, 525 ¶ 2 (App. 2002) (citing ARCAP 15(c)).

**¶13**      We also could treat mother's challenges as waived. Even after making a request under Rule 82(a), Arizona Rules of Family Law Procedure, "[a] litigant must object to inadequate findings of fact . . . at the trial court level so that the court will have an opportunity to correct them." *Elliott v. Elliott*, 165 Ariz. 128, 134 (App. 1990). True, mother moved to alter or amend the superior court's judgment, but mother did not refer to her Rule 82(a) request. And mother's motion challenged the sufficiency of the findings on just four issues: parenting time, the professional fee allocation, the child support deviation, and the attorney fee award. The balance of her arguments related to whether the superior court applied the correct legal standard or whether the superior court's ruling contradicted the children's best interests. Even so, mother argues the superior court "merely made conclusory statements . . . without making specific findings and that led to its conclusion."

**¶14**      Because this case involves the children's best interests, we decline to rely on waiver for father's failure to file an answering brief. *See Diezsi*, 201 Ariz. at 525 ¶ 2. We similarly decline to do so for mother's failure to ask the superior court to make more specific findings under Rule 82(a).

## II.      Legal decision-making and parenting time

**¶15**      This court reviews the superior court's legal decision-making and parenting-time orders for abuse of discretion. *Engstrom v. McCarthy*, 243 Ariz. 469, 471 ¶ 4 (App. 2018). The superior court abuses its discretion when it makes a discretionary decision based on legal error or when the record does not support the decision. *Id.*

### A.      Domestic violence under A.R.S. §§ 25-403 and 25-403.03

**¶16**      The superior court must determine whether to modify legal decision-making and parenting-time in accordance with the child's best interests. A.R.S. § 25-403.A. The court must consider all factors relevant to the child's well-being, including those enumerated by statute. A.R.S. § 25-403.A. In a contested case, the court must also explain why its decision

is in the child's best interests. A.R.S. § 25-403.B. As part of the best-interests analysis, the superior court must consider whether domestic violence or child abuse has occurred. A.R.S. § 25-403.A.8; *see also* A.R.S. §§ 25-403.03 (further requirements for the court's consideration of domestic violence), 13-3601 (defining domestic violence). When allegations of a parent's domestic violence exist, the superior court must make "detailed, specific findings related to legal decision making and parenting time." *See DeLuna v. Petitto*, 247 Ariz. 420, 422 ¶ 4 (App. 2019) (citing A.R.S. § 25-403.03). Failure to do so constitutes an abuse of discretion. *See id.* at 423 ¶ 9.

**¶17**        "The court shall consider evidence of domestic violence as being contrary to the best interests of the child." A.R.S. § 25-403.03.B. If the superior court finds a parent has committed domestic violence, it must determine whether the parent engaged in "significant" domestic violence or if the parent has a "significant history of domestic violence." A.R.S. § 25-403.03.A; *DeLuna*, 247 Ariz. at 423 ¶ 11. Such a finding "precludes an award of joint legal decision-making." *DeLuna*, 247 Ariz. at 423 ¶ 11.

**¶18**        A rebuttable presumption against awarding an offending parent sole or joint legal decision-making arises if the superior court finds the parent "committed an act of domestic violence against the other parent." A.R.S. § 25-403.03.D. The presumption arises no matter whether the act was "significant" or was part of a "significant history of domestic violence." *Compare* A.R.S. § 25-403.03.D (not requiring significance or history beyond an act of domestic violence as defined in the subsection) *with* A.R.S. § 25-403.03.A (requiring "significant" domestic violence or a history of it for the subsection to operate). To determine whether the offending parent rebutted the presumption, the superior court must consider the factors listed in subsection 25-403.03.E and make corresponding findings. *Olesen v. Daniel*, 251 Ariz. 25, 29 ¶¶ 15–16 (App. 2021) (holding those findings are required when denying offending parent's request for legal decision-making); *DeLuna*, 247 Ariz. at 423 ¶ 17 (holding same when granting such a request).

**¶19**        Mother argues it was error to award father joint legal decision-making because the evidence showed father committed significant domestic violence. She also argues the superior court orders do not adequately explain why father's domestic violence was either not significant or did not constitute a significant history of domestic violence.

**¶20**        The orders say father committed "an act of domestic violence to the extent that there was some credible evidence of discipline of the Children historically." The orders rejected "all other allegations." But the

record included allegations of spanking, tripping, pushing, controlling, threatening, and emotionally abusive conduct. The orders did not specify the specific allegations rejected versus those attributed to "discipline."

¶21 Without a more detailed discussion of what incidents constituted domestic violence and their significance, we cannot effectively review the decision-making process underlying the orders. In particular, we cannot determine the seriousness, frequency, or timing of the alleged domestic violence. *See DeLuna*, 247 Ariz. at 424 ¶ 15 n.6 (noting seriousness, frequency, and passage of time are reasonable factors to consider in determining whether domestic violence is significant or if a significant history of domestic violence exists).

¶22 The orders' lack of findings here presents even greater difficulty because mother requested written findings of fact and conclusions of law under Rule 82(a). Factual findings are sufficient "if they are 'pertinent to the issues and comprehensive enough to provide a basis for the decision.'" *Miller*, 175 Ariz. at 299. "The reviewing court needs a sufficient factual basis that explains *how* [the superior court] actually arrived at its conclusion" to "effectively review [its] decision-making process." *Id.*

¶23 The findings of no significant domestic violence and no significant history of domestic violence were conclusory and reliant on unexplained facts. The orders concluded it was not in the oldest child's best interests under A.R.S. § 25-403.03 to award father joint legal decision-making. Yet the orders awarded father joint legal decision-making for all three children. Because the orders did not explain these inconsistent conclusions, we vacate the legal decision-making orders and remand for further findings.

¶24 We also cannot determine whether the parenting-time orders are in the children's best interests. The orders say father committed an act of domestic violence against at least one child. The orders then note father had not committed further acts of abuse despite not completing a batterer's prevention program. The orders also include conclusory findings: "[f]ather has demonstrated that being awarded the opportunity for intensive reunification and substantially equal parenting time is in the best interests of [the younger children], but not [the oldest child]."

¶25 The specific findings on the record must show the reasons for the decision. *See Christopher K. v. Markaa S.*, 233 Ariz. 297, 301 ¶ 19 (App. 2013). Though the orders say the ordered parenting-time was in the

children's best interests, they lack "specific findings explaining [the] reasoning and conclusions" showing how the parenting time would not endanger the children or significantly impair their emotional development. *Engstrom*, 243 Ariz. at 474 ¶ 18; *see Olesen*, 251 Ariz. at 29 ¶ 17 (holding A.R.S. § 25-403.B requires the superior court to make specific findings on the record about domestic violence).

¶26 Here, the orders' conclusory analysis lacks "the essential and determinative facts on which the conclusion was reached." *See Miller*, 175 Ariz. at 300 (citation omitted). We, thus, cannot determine what incidents constituted domestic violence, when or how often they occurred, or what father has done to prevent future acts of domestic violence.

¶27 The orders also contradict the two experts' recommendations for parenting time and legal decision-making without explanation. Though they disagreed as to the details, both the interventionist and the custody evaluator recommended further assessment before father began unsupervised parenting time. Even so, the orders implemented unsupervised parenting time automatically once the Family Bridges temporary order expired, despite the experts' recommendations and without finding father met the burden of proving his parenting time would not endanger the children or significantly impair their emotional development. *See* A.R.S. § 25-403.03.F.

¶28 The orders did not articulate any balancing of the domestic violence concerns with the experts' recommendations for parenting time. For these reasons, we vacate the parenting-time orders and remand for further findings. Based on our rulings, we need not address mother's other arguments about domestic violence and child abuse.

## B. Other best-interests factors under A.R.S. § 25-403.A

¶29 Mother also argues the orders did not sufficiently analyze the best-interests factors listed in A.R.S. § 25-403.A. She also argues the evidence does not support finding the parenting-time orders are in the children's best interests.

¶30 Mother argues the orders did not adequately consider the children's wishes. *See* A.R.S. § 25-403.A.4. When the superior court considered the children's wishes, it found the children to be alienated from father because of both parents' actions, to varying degrees. The children wanted to live with mother and to limit parenting time with father. Mother is effectively arguing the children's wishes should be given greater weight.

We do not address this argument because we do not reweigh evidence on appeal. *Hurd v. Hurd*, 223 Ariz. 48, 52 ¶ 16 (App. 2009).

**¶31** Mother also argues the orders do not explain why father is more likely to allow frequent, meaningful, and continuing contact with mother in the short term. *See* A.R.S. § 25-403.A.6. But the orders based that finding on mother's preference for a "protracted reunification process with small steps[.]" Mother may disagree with the superior court's view of the evidence, but the superior court sufficiently stated its reasoning.

**¶32** Finally, mother challenges the finding of the children's adjustment to home, school, and community. *See* A.R.S. § 25-403.A.3. The orders say the children were happy and well-adjusted living with mother and estranged from father but "preparing to work towards reunification" with him. Still, the orders did not address how the parenting-time orders or the reunification process will affect the children once father exercises regular parenting time. On remand, the legal decision-making and parenting-time orders must explain how this factor is weighed. *See* A.R.S. § 25-403.B; *Miller*, 175 Ariz. at 299.

## III. Allocation of professional fees

**¶33** The superior court ordered Mother to pay 60% of all future reunification therapy fees and supervised parenting-time costs. Mother challenges the orders on two grounds: (1) the record does not support the implicit finding she could afford those costs, and (2) the orders do not discuss her ability to pay those costs as Rule 95 requires.

**¶34** Mother's most recent financial affidavit shows she has no income, does not work outside the home, and has $10,810.00 in monthly expenses, including about $4,000.00 a month for the interventionist's fees. Father's most recent financial affidavit shows he earns $5,150.00 a month and has $9,417.00 in monthly expenses. Both parents claimed to have additional debts, and mother filed for bankruptcy during these proceedings.

**¶35** Mother testified she could not afford to continue to pay 75% of the interventionist's fees under the previous orders or contribute to an intensive reunification program. She also testified she has exhausted all her financial resources and still owes money to the interventionist. Even so, she testified she will pay the interventionist's fees "the best she possibly can" if ordered to do so. In response to the superior court's direct questions about her ability to pay for future interventionist's fees, mother testified she generally could pay a portion of them but not the $7,000.00 a month she had

been paying. Mother expected the cost would decrease as the parents progressed towards unsupervised parenting time. But on redirect, she clarified she meant costs should come down under the proposed parenting plan, not that she could afford the lower cost.

**¶36** The orders did not address the evidence of mother's ability to pay the professional fees. Rather, they said it was appropriate for mother to pay more of the professional fees instead of father receiving attorney fees. The allocation of 60% of the professional fees to mother was, in part, a sanction for her acting unreasonably during the litigation. Mother concedes sanctions are an appropriate consideration in allocating the fees, but she argues father is the one who acted unreasonably and should have to pay more. But the orders say both parties acted unreasonably without explaining how their behavior justified allocating 60% of the professional fees to mother. And the record contains no findings about the parties' financial resources, which must be considered under A.R.S. § 25-324.A.

**¶37** True, we could parse the child support and attorney fees findings to draw inferences to support affirming the allocation of professional fees. For example, in the child support discussion, the orders acknowledge mother filed for bankruptcy, but they also note mother was able to "mount[] a thorough and substantial legal challenge" while her husband supported the family. This acknowledgment implies mother could pay more of the professional fees than father. But even then, the findings do not show why allocating the professional fees as a sanction was appropriate. And we cannot assume those findings underpinned the unrelated professional fees findings because of mother's Rule 82 request. *See Miller*, 175 Ariz. at 300; *Elliot*, 165 Ariz. at 135.

**¶38** We, thus, vacate the allocation of professional fees and remand for further findings of fact necessary under Rules 82(a) and 95(a).

## IV. Child support deviation

**¶39** The orders say the $756.00 child support obligation under the Guidelines was inappropriate and unjust here, and they deviated the award to zero. This court reviews the superior court's child support orders for an abuse of discretion. *Nash v. Nash*, 232 Ariz. 473, 476 ¶ 5 (App. 2013).

**¶40** The superior court must order child support in the amount resulting from applying the Guidelines unless it finds in writing the application of the Guidelines is inappropriate or unjust based on all relevant factors, including those listed in A.R.S. § 25-320.D. *Nia v. Nia*, 242 Ariz. 419, 424 ¶ 20 (App. 2017). Those factors include, as relevant here, (1)

the children's financial resources and needs, (2) the parents' financial resources and needs, (3) the children's physical and emotional condition and educational needs, (4) the children's medical support needs, and (5) the duration of parenting time and related expenses. A.R.S. § 25-320.D.1, 2, 4, 6, 8. Mother argues the findings are insufficient and the record does not support the deviation.

¶41        The orders include a child support worksheet showing the income and adjusted child support incomes of both parents. The orders say father would owe $756.00 monthly under the Guidelines but then says applying the Guidelines is inappropriate and unjust. The orders also say downward deviation was in the children's best interests and still enabled the parents to provide the children with the necessities of life. The orders also awarded zero child support because it found the "[f]unds are best used to reunify the family relationships." This explanation sufficiently explained why the superior court settled on zero. *See Elliot*, 165 Ariz. at 135.

¶42        The findings did not reference the specific paragraphs of subsection 25-320.D. But the orders addressed the parents' current incomes and the cost of the reunification professionals. And it says the children's needs are being met. The orders, thus, included the necessary findings under the statute and provides an adequate factual basis under Rule 82(a).

¶43        Mother claims she cannot afford to support the children and the reunification efforts without child support. The superior court rejected her claim because she had the resources to engage in "thorough and substantial" litigation of those issues. We defer to this credibility determination. *Hurd*, 223 Ariz. at 52 ¶ 16.

¶44        Mother also argues father did not meet his burden of showing why a deviation was appropriate. Father testified he could not afford to pay both child support and 25% of the professional fees as ordered. He testified his financial affidavit was accurate and he earned $58,000.00 annually. The interventionist and the parenting-time supervisor cost several thousand dollars each month.

¶45        We affirm the child support orders, but if on remand the orders for legal decision-making, parenting time, or the allocation of professional fees change, the superior court must reconsider child support.

## CONCLUSION

**¶46** We vacate the legal decision-making and parenting-time orders and remand for sufficient written findings of fact and conclusions of law to support the orders. We also vacate and remand the allocation of professional fees for sufficient written findings of fact and conclusions of law addressing mother's ability to pay under Rule 95(a). We affirm the child support orders, subject to reconsideration based on any changes on remand to the legal decision-making, parenting-time, or professional fee allocation orders.



AMY M. WOOD • Clerk of the Court
FILED: AA