IN THE

# ARIZONA COURT OF APPEALS
### DIVISION TWO

_____

IN RE THE SUPPORT OF V.L.

JASON LOVE,
*Petitioner/Counter-Respondent/Appellee,*

*v.*

JENEVIA LEAL,
*Respondent/Counter-Petitioner/Appellant.*

No. 2 CA-CV 2023-0199-FC
Filed October 1, 2024

_____

Appeal from the Superior Court in Maricopa County
No. FC2016008552
The Honorable James Drake, Judge

**AFFIRMED IN PART; VACATED IN PART AND REMANDED**

_____

COUNSEL

Hoffman Legal LLC, Phoenix
By Amy W. Hoffman
*Counsel for Petitioner/Counter-Respondent/Appellee*

kdlaw P.C., Scottsdale
By Kiilu David
*Counsel for Respondent/Counter-Petitioner/Appellant*

## OPINION

Presiding Judge O'Neil authored the opinion of the Court, in which Judge Vásquez and Judge Kelly concurred.

O' N E I L, Presiding Judge:

**¶1**        Jenevia Leal appeals from the trial court's order requiring Jason Love to pay her child support. She challenges the amount of income the court attributed to both parties, the start date of the child support, and the court's decision not to deviate from the presumptive child support amount. She also asserts that the court abused its discretion in failing to award her attorney fees. We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

### Background

**¶2**        We view the facts in the light most favorable to upholding the trial court's child support award. *See Milinovich v. Womack*, 236 Ariz. 612, ¶ 7 (App. 2015). Leal and Love share a child, V.L., who was born in 2016. After Love petitioned the court to determine paternity, legal decision-making authority, parenting time, and child support, he and Leal reached an agreement regarding those issues. *See* Ariz. R. Fam. Law P. 69. The court entered a stipulated order incorporating their agreement in 2017. In part, Leal and Love agreed to no child support payments. The parties lived together until they separated in July 2019.

**¶3**        In November 2021, the state filed a petition to establish child support on behalf of Leal. In February 2022, Love filed a petition to modify legal decision-making authority, parenting time, and child support. Leal then filed a counter-petition for modification in May. Both parties requested an award of attorney fees and costs. After an evidentiary hearing in June 2023, the trial court entered an order in July requiring Love to pay Leal child support starting in August. Leal appeals from that order.[1] We

---

[1]Before filing her notice of appeal, Leal moved to alter or amend the judgment under Rule 83, Ariz. R. Fam. Law P. The trial court denied her motion. Leal's notice of appeal does not refer to this ruling. To the extent Leal challenges this ruling, we lack jurisdiction to address it. *See* Ariz. R.

have jurisdiction.  *See* A.R.S. §§ 12-120.21(A)(1), 12-2101(A)(1); *see also* Ariz. R. Fam. Law P. 78(a)(1), (c).

## Child Support

**¶4**        "Child support awards are within the discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion." *Simpson v. Simpson*, 224 Ariz. 224, ¶ 4 (App. 2010).  "An abuse of discretion exists when the court commits an error of law in reaching a discretionary conclusion," *Coconino County v. Antco, Inc.*, 214 Ariz. 82, ¶ 6 (App. 2006*)*, or "when the record, viewed in the light most favorable to upholding the trial court's decision, is 'devoid of competent evidence to support the decision,'" *Milinovich*, 236 Ariz. 612, ¶ 7 (quoting *Little v. Little*, 193 Ariz. 518, ¶ 5 (1999)).

## I.   Income Calculations

**¶5**        Leal argues the trial court "failed to properly calculate the parties' incomes" and, as a result, incorrectly calculated child support. Specifically, she asserts that the court erred by calculating Love's income using his year-to-date income as presented at the evidentiary hearing in June 2023 instead of his total income for the previous year.  She also argues the court's assessment of each party's income included miscalculations.  For the reasons that follow, we cannot conclude that the method the court used to calculate Love's income was an abuse of discretion.  Leal has, however, correctly identified a miscalculation in the income attributed to each party.

**¶6**        Love testified his annual base pay is $160,000 and his gross pay varies depending on his commission.  In his 2022 affidavit of financial information, he reported gross income ranging from around $169,000 in 2019 to nearly $327,000 in 2021.  In an updated affidavit filed in June 2023, he reported that his gross income was just over $346,000 in 2022 and his year-to-date income was almost $121,000.  At the evidentiary hearing, he estimated his gross pay in 2023 would be "about a third" of what he made in 2022 due to "economic challenges."  He testified that his commission is unreliable, explaining that in some quarters he receives commission checks

---

Civ. App. P. 9(e)(3) ("party intending to appeal one or more of the orders disposing of one or more of the motions listed in Rule 9(e)(1) must file a notice of appeal"); *see also* Ariz. R. Civ. App. P. 9(e)(1)(C) (specifying motions under Rule 83(a)).

and in other quarters he does not. Leal also testified that Love's commission "is very up and down."

¶7 Love asked the trial court to calculate his child support income at $13,423.09 per month, based on his $160,000 annual base pay. Leal requested that Love be attributed monthly child support income of $32,617.95, based on his total income from 2022. The court, however, concluded that both parties were using "income numbers that likely do not reflect actual income." It therefore attributed $20,000 per month to Love based on his year-to-date earnings in 2023. It is true, as Leal suggests, that Love's 2023 income by the time of the evidentiary hearing in June did not include income from certain sources that had significantly impacted his 2022 income. But Love testified that his commission payments "drastically can change and range" and that he expected to receive less income from those sources in 2023. We do not reweigh evidence on appeal, and we "give due regard to the trial court's opportunity to judge the credibility of the witnesses." *Hurd v. Hurd*, 223 Ariz. 48, ¶ 16 (App. 2009). The child support guidelines give courts discretion to decide whether to consider commissions and other forms of "non-continuing or non-recurring" income. A.R.S. § 25-320 app. § II(A)(1)(b), (d). The court here did not abuse its discretion in determining Love's income based on his 2023 year-to-date income. *See Milinovich*, 236 Ariz. 612, ¶ 7.

¶8 Leal also argues the trial court miscalculated Love's monthly income because it divided his year-to-date earnings by six when those earnings did not reflect a full six months of pay. Indeed, the court stated that Love's earnings "for half the year" were "$120,991.21, or about twenty thousand a month." Based on Love's pay stubs, however, that amount represented his earnings through only May 27, 2023. Love was receiving paychecks every other week. Thus, the pay period ending on May 27, 2023, was his eleventh of the year. Assuming twenty-six total pay periods per year, this left fifteen paychecks remaining. *See Martin v. Reinstein*, 195 Ariz. 293, n.28 (App. 1999) (Kleinschmidt, J., dissenting) ("Judicial notice as to matters of common knowledge is a broad concept in Arizona.").

¶9 The record does not support the trial court's conclusion that the 2023 year-to-date earnings represented Love's income for "half the year." The court therefore undercalculated Love's child support income when it concluded that he had so far earned "about twenty thousand a month" in 2023. Thus, we vacate the court's finding and remand for the court to recalculate Love's child support income for the purpose of recalculating the appropriate child support obligation.

¶10 Additionally, Leal contends the "trial court erred in calculating [her] income." The court found that she had "earned $38,438 this year, or about six thousand dollars a month." She asserts that the court's conclusion that she had earned $38,438 in the first six months of 2023 is not supported by the evidence, such that the court erred by calculating her monthly income at $6,000 per month.

¶11 Leal testified that she had a full-time job at which she made $15 per hour. She also testified that she could make approximately $3,400 in tips in a "good month." Love argues that this testimony supports the trial court's finding that she had made about $6,000 a month. However, this evidence does not support the court's finding that Leal's year-to-date income in 2023 was $38,438. Rather, this number appears to have been derived from Leal's affidavit filed on December 14, 2022, indicating that her year-to-date income by that time in 2022 was $38,438.[2] Although Leal filed an affidavit on June 14, 2023, identifying her year-to-date income for 2023, that affidavit was not admitted into evidence at the hearing and indicates earnings of only $21,927. We can identify no support in the record for the court's calculation, which appears to have been an error. We remand for the court to recalculate Leal's child support income for the purpose of recalculating child support.

## II. Retroactivity

¶12 Leal argues the trial court erred in declining to award retroactive child support beginning July 2019, the month of the parties' physical separation, or, in the alternative, beginning on the date the state filed its petition for child support on her behalf in November 2021. The question, in essence, is whether the July 2023 order amounts to: 1) an order for support entered upon establishment of paternity, subject to retroactivity under A.R.S. § 25-809(B); 2) an order for support in a proceeding where "child support has not been ordered by a child support order," subject to retroactivity under A.R.S. § 25-320; or 3) a modification of child support whose effective date is governed by A.R.S. § 25-503(E). We conclude the

---

[2]For this reason, Leal asserts the trial court improperly "used income data for different years for each party." She cites no authority and does not develop an argument that the court had an obligation to use data from the same year. *See Boswell v. Fintelmann*, 242 Ariz. 52, n.3 (App. 2017) (failure to develop and support argument results in waiver); Ariz. R. Civ. App. P. 13(a)(7)(A) (argument section of opening brief must contain contentions with "supporting reasons" and "citations of legal authorities").

order was a modification. The court erred, therefore, in failing to make the child support modification effective as provided in § 25-503(E) without a showing of good cause.

¶13 Leal cites § 25-809(B), which permits a trial court to award child support retroactive up to three years before commencement of a paternity proceeding. *See Gelin v. Murray*, 251 Ariz. 544, ¶ 14 (App. 2021) (holding that § 25-809(A) "grants the superior court general authority in paternity actions to award past child support"). But § 25-809(B) does not apply here. This was not a proceeding to establish paternity; rather, it was a proceeding to modify existing legal decision-making authority, parenting time, and child support orders.

¶14 In the alternative, Leal relies on § 25-320 to argue that the trial court should have awarded child support retroactive to the date of separation in July 2019. *See* § 25-320(C). At a minimum, she argues support should have commenced in November 2021, the month the state filed its petition. *See* § 25-320(B). In a child support proceeding, "[i]f child support has not been ordered by a child support order and if the court deems child support appropriate," then "the court shall direct, using a retroactive application of the child support guidelines to the date of filing . . . , the amount that the parents shall pay for the past support of the child." *Id.* In addition, "[i]f the parties lived apart before the date of the filing for . . . child support and if child support has not been ordered by a child support order, the court may order child support retroactively to the date of separation." § 25-320(C). Leal argues that child support was "never adjudicated" in the 2017 stipulated order for parenting time, child support, and legal decision-making authority, which stated that child support was "a non-issue at [that] time" because Love and Leal were "continuing to cohabitate."

¶15 The trial court had no discretion to leave child support undetermined when it entered its parenting time order in 2017. *See* A.R.S. § 25-403.09(A) (court required to "determine an amount of child support" "[f]or any parenting time order"). Thus, Leal's theory that child support was "never adjudicated" depends on the court having done what it lacked the discretion to do. Further, despite its language that child support was "a non-issue," the 2017 order does not clearly indicate that the court intended to leave child support unresolved rather than determining that the appropriate amount of child support at that time was zero. If the court's order amounted to a non-adjudication of child support, then presumably either party could have petitioned for child support at any time. The court's order here, however, placed express conditions on either party's ability to

seek a modification of child support. It required that the parties must "choose to no longer cohabitate" and a party "seeking" support must file a petition.

**¶16** In the 2017 order, the trial court adopted the parties' stipulation that no child support would be paid unless and until the parties stopped living together and one party filed a petition. In so doing, the court determined an amount of child support, as it was required to do when it entered its parenting time order. *See* § 25-403.09(A). It ordered, in effect, that the amount of child support would be zero until the relevant circumstances changed—namely, when the parties no longer lived together and one party petitioned the court. *See Forszt v. Rodriguez*, 212 Ariz. 263, ¶ 9 (App. 2006) ("We may affirm the trial court's ruling if it is correct for any reason apparent in the record.").

**¶17** The 2017 order, therefore, was a child support order providing for monetary support of V.L., and the 2023 order was a child support modification.[3] *See* § 25-503(E); *cf. Ali v. Ali*, 253 Ariz. 102, ¶ 13 (App. 2022) ("An order providing that neither parent is required to pay child support to the other parent for the benefit of a child is an order providing for monetary support for that child."). Because § 25-320(B) allows for retroactive child support only when it "has not been ordered by a child support order," it does not apply here.[4]

**¶18** Leal argues that even if the 2023 order was a modification, "retroactive support should still be awarded as of December 2021," the month following the petition. When a child support order is "modified,"

---

[3]For this reason, we do not address Leal's argument that a waiver of child support is against public policy. Regardless, policy arguments are for the legislature to address. *State ex rel. Ariz. Dep't of Revenue v. Tunkey*, 254 Ariz. 432, ¶ 20 (2023).

[4]Likewise, because there was a prior child support order, we reject Leal's argument, raised for the first time in her reply brief, that § 25-320(C) provides retroactive child support as of the date of separation. *See* § 25-320(C) ("[I]f child support has not been ordered by a child support order, the court may order child support retroactively to the date of separation, but not more than three years before the date of the filing for . . . child support."); *see also State v. Lopez*, 217 Ariz. 433, n.4 (App. 2008) (within appellate court's discretion to address issues raised for first time in reply brief).

the modification is "effective on the first day of the month following notice of the petition for modification . . . unless the court, for good cause shown, orders the change to become effective at a different date but not earlier than the date of filing the petition for modification."  § 25-503(E).

¶19      The trial court denied Leal's request for retroactive child support going back to the time of separation because "the parties had previously agreed to waive child support" and the court would "not intrude on their prior agreement."  Love asserts this was a finding of good cause to set a later effective date than what § 25-503(E) otherwise would have required.  But a prior child support order does not preclude later modification.  In fact, the 2017 order expressly contemplated modification upon either party's petition, "[s]hould the parties choose to no longer cohabitate."  Thus, although the court had discretion to set an effective date for the modification other than the "first day of the month following notice of the petition for modification," *id.*, the mere existence of a prior child support order—stipulated or otherwise—cannot have amounted to good cause.  We therefore remand for the court to determine whether good cause justifies an alternative effective date and, if so, to make the required finding.  *See id.*

## III. Deviation

¶20      Leal argues the trial court erred in declining to deviate from the child support guidelines.  A court must deviate from the guidelines if it "find[s] that the strict application of the Guidelines is inappropriate or unjust."  § 25-320 app. § I(A) (Step 11).  In making this determination, the court must consider "all relevant factors, including those set forth in . . . [§] 25-320."  § 25-320 app. § IX(B).  Section 25-320(D) enumerates factors including "[t]he financial resources and needs of the child," "[t]he physical and emotional condition of the child, and the child's educational needs," "[t]he financial resources and needs" of each parent, and "[t]he standard of living the child would have enjoyed if the child lived in an intact home."

¶21      The trial court denied Leal's upward deviation request, finding that it was not "appropriate."  On appeal, Leal asserts that the relevant factors under § 25-320(D) favor an upwards deviation from the amount specified in the guidelines.  She asserts that V.L. had "grown accustomed to" an "upper-class lifestyle" "due to [Love's] significant income" and that she is not able to provide him "the same lifestyle."  Additionally, she argues that V.L., who has been diagnosed with autism, "has extraordinary expenses, including specialized therapy and toys and educational aids."  She further states that a deviation is warranted because

she "earns the majority of her funds" through "cash tips which have proved to be inconsistent and unpredictable." In contrast, she asserts that Love is "a significant earner."[5]

¶22      Leal's argument is essentially a request to reweigh the evidence, which we will not do. *See Hurd*, 223 Ariz. 48, ¶ 16. There was evidence in the record to support the trial court's finding that a deviation was not warranted. *See Nash v. Nash*, 232 Ariz. 473, ¶ 5 (App. 2013) ("We will accept the court's findings of fact unless they are clearly erroneous."); *Davis v. Zlatos*, 211 Ariz. 519, ¶ 18 (App. 2005) ("Factual findings 'are not clearly erroneous if substantial evidence supports them,' and '[s]ubstantial evidence is evidence which would permit a reasonable person to reach the trial court's result.'" (alteration in *Davis*) (quoting *In re $26,980 U.S. Currency*, 199 Ariz. 291, ¶ 9 (App. 2000))). The court did not abuse its discretion in declining to deviate. *See Simpson*, 224 Ariz. 224, ¶ 4.

## Attorney Fees

¶23      Leal argues the trial court erred in denying her request for an award of attorney fees. We will not disturb a decision regarding attorney fees absent an abuse of discretion. *Engel v. Landman*, 221 Ariz. 504, ¶ 45 (App. 2009). We find no such abuse here.

¶24      Leal argues that "an award of [attorney] fees was warranted" because Love earns "nearly ten times" what she does. She suggests disparity in income alone required the trial court to award her attorney fees under § 25-324. That statute, however, "requires the court to consider both the parties' resources and the reasonableness of their positions." *Nicaise v. Sundaram*, 244 Ariz. 272, ¶¶ 33-34 (App. 2018), *vacated in part on other*

_____

[5]To the extent Leal argues the parties' combined income supports a deviation, we do not address this argument because, pursuant to our remand, the trial court must first recalculate each party's child support income. *See* § 25-320 app. § IX(D)(2) (circumstances potentially warranting deviation include cases in which parties' "combined income exceeds $30,000 monthly and there is a significant disparity in income between the parents"). Then, if the combined child support income of the parties is greater than $30,000 per month, it is for the court to determine whether that income and any significant income disparity between the parties warrants a deviation under the particular circumstances of this case. *See id.*; § 25-320 app. § III(A)(1)(c)(ii); *see also Coburn v. Rhodig*, 243 Ariz. 24, ¶ 15 (App. 2017) (trial court determines questions of fact "in the first instance").

*grounds*, 245 Ariz. 566, ¶ 17 (2019); § 25-324(A). Leal incorrectly relies on Arizona cases addressing a prior version of § 25-324, under which the disparity in the parties' financial resources was the "exclusive or predominant consideration for . . . an [attorney fee] award." *Myrick v. Maloney*, 235 Ariz. 491, ¶ 8 (App. 2014). In *Myrick*, we explained that the relevant language in cases such as *Burnette v. Bender*, 184 Ariz. 301 (App. 1995), on which Leal relies, had been superseded by the current version of § 25-324(A), which—since its amendment in 1996—has included "the reasonableness of the parties' positions as a second factor to consider when determining whether to award fees." 235 Ariz. 491, ¶ 8.

**¶25** Additionally, Leal argues the trial court should have awarded attorney fees under § 25-324 because Love took unreasonable positions at the evidentiary hearing. Leal has not demonstrated that Love's positions were unreasonable, much less that the court abused its discretion in implicitly determining otherwise.

**¶26** Finally, Leal also argues the trial court should have ordered Love to pay her attorney fees as a sanction because he "unnecessarily delayed and prolonged the proceedings" by repeatedly failing to timely provide her with his income and other information as required under Rule 49, Ariz. R. Fam. Law P. Even assuming a violation of a party's obligation to provide disclosure or discovery, imposition of sanctions is a matter of discretion for the trial court. *See* Ariz. R. Fam. Law P. 65(b); *see also Seidman v. Seidman*, 222 Ariz. 408, ¶ 18 (App. 2009). Leal has demonstrated no abuse of discretion here.[6]

### Disposition

**¶27** In our discretion, we deny Love's request for attorney fees under § 25-324. We also deny Leal's request, which cites no supporting authority. *See Ezell v. Quon*, 224 Ariz. 532, ¶ 31 (App. 2010); *see also* Ariz. R. Civ. App. P. 21(a)(2). Because each party has prevailed in part, we award neither party's costs on appeal. *See Compassionate Care Dispensary, Inc. v. Ariz. Dep't of Health Servs.*, 244 Ariz. 205, ¶ 44 (App. 2018). We affirm in

---

[6]To the extent Leal argues she was entitled to an award of attorney fees pursuant to A.R.S. §§ 12-349, 25-403.08(B), and 12-350, she waives these arguments by failing to "develop and support" them on appeal. *Boswell*, 242 Ariz. 52, n.3; *see also* Ariz. R. Civ. App. P. 13(a)(7)(A).

part, vacate in part, and remand for proceedings consistent with this opinion.